PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
07/22/99
THOMAS  K. KAHN
CLERK

No. 98-2387

D. C. Docket No. 92-744-Civ-T-17C

EPIC METALS CORP., a Pennsylvania Corporation,

Plaintiff-Counter-Defendant-Appellee,

versus

FRANK SOULIERE, SR.;
CONDEC, INC., a Florida corporation,

Defendants-Counter-Claimants-Appellants.

Appeal from the United States District Court
for the Middle District of Florida

**(July 22, 1999)**

Before ANDERSON, Chief Judge, BLACK, Circuit Judge, and STAFFORD[*], Senior District Judge.

BLACK, Circuit Judge:

---

[*] Honorable William Stafford, Senior U.S. District Judge for the Northern District of Florida, sitting by designation.

Appellants Condec, Inc. and Condec President Frank Souliere (collectively Condec) appeal the trial court's modification of a permanent injunction after this Court's mandate set aside a portion of the original injunction. Appellants claim the trial court abused its discretion by granting Appellee's motion for modification and argue that even if the court had the discretion to modify, the ordered modification was overbroad. We conclude the trial court had the discretion to modify the injunction and did not abuse that discretion, and therefore affirm.

## I. PROCEDURAL BACKGROUND

Appellee Epic Metals Corp. (Epic) sued Condec in June 1992, alleging that Condec's CONDEC steel decking product was a Lanham Act trade dress infringement of Epic's EPICORE steel decking product and that Condec had infringed Epic's Copyright in EPICORE catalogs and promotional materials. After a bench trial, the trial court found in Epic's favor, ruling that Condec had infringed Epic's copyrighted catalog and trade dress.[2] The court awarded statutory damages for the copyright claims, as well as several thousand dollars in damages for the trade dress infringement claim, reserving jurisdiction over injunctive relief. On June 9, 1995, the trial judge signed a two-paragraph final order of permanent injunctive relief, forbidding Condec from reproducing or copying Epic's catalog materials and from "[m]anufacturing,

_____

[2] The parties agreed to proceed before a magistrate pursuant to 28 U.S.C. § 636(c).

2

distributing, selling, or offering for sale any composite steel floor deck utilizing the dovetail rib profile of the plaintiff, EPIC METALS CORPORATION . . . or any other dovetail rib profile."

A three-judge panel of this Court upheld the finding of copyright violation without discussion, but reversed the trade dress infringement finding. *Epic Metals Corp. v. Souliere*, 99 F.3d 1034, 1042 (11th Cir. 1996) (*Epic Metals I*).[3] On remand from this Court, the trial court struck the paragraph of the injunction that forbade Condec from manufacturing steel decking with a dovetail rib profile, freeing Condec to resume the manufacture and sale of its CONDEC product. The paragraph of the injunction forbidding future copyright violations remained in effect.

Shortly thereafter, Epic filed a "Motion to Modify Permanent Injunction in Light of Appellate Court Mandate." In that motion, Epic sought to prevent Condec from holding out to the public that CONDEC has a Underwriter's Laboratory (UL) fire rating until the product's fire resistance is independently tested. Among the trial court's original findings on the copyright infringement issue, the court determined that Condec infringed Epic's copyright in its EPICORE Concept 1 catalog and EPICORE Concept 2 catalog when Condec copied the section properties and load tables from the

---

[3] The Court's 1996 opinion presents a complete explanation of the technical aspects of the dovetail joint design of both parties' steel decking products, which we need not repeat here. *See Epic Metals I*, 99 F.3d at 1035-37.

EPICORE catalogs and submitted them to UL as the section properties and load tables of its own product.[4] UL approved certification for CONDEC without requiring fire resistance testing based on the conclusion that the load tables for CONDEC matched the already-approved load tables of EPICORE. The trial court found Condec's use of the copyrighted materials enabled it to avoid the cost of fire testing, which could have been as high as $70,000 to $80,000. The trial court also found UL certification is essential because most building codes, especially for commercial properties or multi-unit residential complexes, require steel decking products be UL-certified.

Because the injunction as modified by this Court's mandate allowed Condec to resume manufacture of its product, Epic's motion asked the court to prevent Condec from "benefit[ing] from the fruits of their willful copyright infringement" by enjoining Condec from representing to others that its product has a UL fire rating until CONDEC is independently tested. Treating the motion as a Rule 60(b)(6) motion for post-judgment relief, the trial court first determined that it had jurisdiction to modify the permanent injunction, noting "although this court is bound to follow the express and implied holdings of the appellate court, it is on remand 'free to address,

_____

[4] Section properties tell engineers the amount of deflection or sag and the stress or failure point of the steel decking product; calculating section properties is a rather complex engineering task. Load tables are created from performance tests in the field and are used to quantify the load-bearing capabilities of steel decking material. Section properties and load tables provide engineers and architects with critical information relied upon in the design and building process.

as a matter of first impression, those issues not disposed of on appeal,'" (citing *Piambino v. Bailey*, 757 F.2d 1112, 1119 (11th Cir. 1985) and others). The trial court concluded that "[i]f defendants are permitted to use the UL rating they obtained through infringement, the original purpose of the injunction would not be fulfilled," and granted the relief requested.[5]

## II. DISCUSSION

Condec appeals, asserting that the court abused its discretion in modifying the injunction because Epic did not make an appropriate showing to justify modification and this Court's mandate precludes modification. Alternatively, Condec argues the language of the newly-modified injunction is beyond the scope of the remedies provided for by copyright law.

## A. Authority to Modify

Upon appellate review, "[m]otions for relief from a final judgment are addressed to the sound discretion of the district court, guided of course by accepted

---

[5] In its entirety, the new paragraph in the injunction reads:

Defendant[s] . . . are hereby permanently enjoined from:
Advertising, representing or holding out to the public that Defendants possess an Underwriter's Laboratory fire rating . . . unless and until such time as Defendants have submitted independent fire testing, independently tested load tables and independently calculated section properties information on its CONDEC product, and Underwriter's Laboratory expressly grants Defendants a fire rating . . . based upon information other than that unlawfully copied from EPIC's EPICORE Concept 1 catalog.

legal principles." *Hand v. United States*, 441 F.2d 529, 531 (5th Cir. 1971).[6] In this case, those legal principles were set out long ago in *United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 88 S. Ct. 1496 (1968) and its progeny.  In *United Shoe*, the United States as plaintiff sought to modify a ten-year-old consent decree and injunction in an antitrust case, arguing that the divestiture goals of the order could only be achieved through further court action.  *United Shoe*, 391 U.S. at 247, 88 S. Ct. at 1499.  The Supreme Court held the district court had the power to grant the relief requested if the Government showed the decree had failed to accomplish the results it was designed to achieve.  *United Shoe*, 391 U.S. at 251-52, 88 S. Ct. at 1500-01. The Court distinguished its prior decision in *United States v. Swift & Co.*, 286 U.S. 106, 52 S. Ct. 460  (1932), in which the Court set a higher standard for modification of a decree or injunction when "*defendants* sought relief not to achieve the purposes of the provisions of the decree, but to escape their impact."  *United Shoe*, 391 U.S. at 249, 88 S. Ct. at 1500 (emphasis added).

This Circuit has followed the rule of *United Shoe* when a plaintiff seeks to modify a decree or injunction designed to protect plaintiff's interests.  In *Exxon Corp. v. Texas Motor Exchange of Houston, Inc.*, 628 F.2d 500 (5th Cir. 1980), the Texas

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

Motor Exchange had been barred by permanent injunction from using the trademark "TEXXON." The company began instead to use the names "Texon" and "Tex-On," and Exxon moved to modify the permanent injunction to prohibit the use of those names as well. The Court found that "[t]he holding in *United Shoe Machinery* indicates that an injunction may be modified to impose more stringent requirements on the defendant when 'the original purposes of the injunction are not being fulfilled in any material respect.'" *Exxon*, 628 F.2d at 503 (citation omitted). The Court looked at the original purpose of the permanent injunction and concluded that if the plaintiff could establish the new circumstance infringed on that purpose, then the injunction should be modified. *Exxon*, 628 F.2d at 504; *see also Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1539 (11th Cir. 1986) (approving of and applying *Exxon*'s interpretation of *United Shoe* to uphold district court's alteration of a permanent injunction).

In this case, the trial court was within its discretion in concluding that this Court's mandate effected a change in circumstances so that modification was required. The parties and the trial court agreed that the purpose of the original injunction was to prevent Condec from infringing on Epic's copyrights. Prior to the Court's decision in *Epic Metals I*, there was no need to enjoin advertisement of the UL rating because Condec was not allowed to sell the product at all. Once this Court's decision opened

7

the door for Condec to sell its product again, the trial court acted within its discretion to determine that modification was necessary to prevent Condec from infringing on Epic's copyrights. Absent modification, Condec would reap an unexpected and unintended windfall by using a UL rating obtained through the copyright violation.

Condec argues the injunction is duplicative of the statutory damages awarded. But in copyright the two remedies are not mutually exclusive. See, e.g., *Montgomery v. Noga*, 168 F.3d 1282, 1304-05 (11th Cir. 1999) (looking at both statutory damages award and injunctive relief as bases for concluding that plaintiff prevailed for attorney's fees purposes); *Twentieth Century Music Corp. v. Frith*, 645 F.2d 6, 7 (5th Cir. Unit B May 1981) (holding defendants have no right to jury trial in copyright action where plaintiffs seek only statutory damages and injunctive relief); *see also* 4 *Nimmer on Copyright* § 14.06[B] ("the prevailing plaintiff in a copyright infringement action may obtain, in addition to a monetary recovery, a permanent injunction"). The trial court was well within its discretion in awarding both statutory damages and injunctive relief.[7]

B. Scope of Modification

---

[7] In any event, this Court in *Epic Metals I* upheld the prior award of both statutory damages and injunctive relief, and we are bound by that prior panel's ruling. *See Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 169 (11th Cir.1994) (under law of the case doctrine, "findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial or on a later appeal." (citations omitted)).

Finally, Condec argues that even if injunctive relief is appropriate, the trial court abused its discretion in that it fashioned an injunction that is overbroad, because it (1) reaches beyond the parties of the litigation by requiring UL to withdraw its certification of CONDEC and (2) goes beyond remedying the actual infringement by regulating the "fruit of the infringing tree." We reject both arguments.

The injunction does not place any restrictions on UL or any other non-party; it merely regulates Condec's infringing actions.[8] Condec argues for the first time in its reply brief that the injunction as modified impermissibly regulates the "fruit of the infringing tree," or the benefits generated by the original infringement. *See* 4 *Nimmer on Copyright* § 14.06[C]. This court does not address arguments raised for the first time in a reply brief. *Hall v. Coram Healthcare Corp.*, 157 F.3d 1286, 1290 (11th Cir. 1998).

## III. CONCLUSION

The trial court did not abuse its discretion in finding that without modification the original purposes of the injunction would be unfulfilled in a material respect, nor is the injunction as modified overbroad.

---

[8] Moreover, there is little danger of Condec being forced to incur more testing expenses than absolutely necessary to obtain a legitimate fire rating from UL. The trial court explicitly reserved the right to modify the injunction in Condec's favor, upon a proper showing by Condec, "[i]f defendants learn that any language in the permanent injunction prohibits them from obtaining a fire rating from Underwriter's Laboratory which they would legally be able to obtain."

AFFIRMED.