[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11681

_____

D.C. Docket No. 5:20-cv-00006-LSC
Bkcy. No. 18-bk-82617-CRJ-7

SUVICMON DEVELOPMENT, INC.,
GARDENDALE HOUSING, INC.,
PATRIARCH ENTERPRISES, INC.,

Plaintiffs – Appellants,

versus

CHARLES M. MORRISON, SR.,

Defendant – Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(March 25, 2021)

Before GRANT, TJOFLAT, and ED CARNES, Circuit Judges.

TJOFLAT, Circuit Judge:

In this bankruptcy appeal, the plaintiffs seek to proceed with a suit for fraudulent transfer against the debtor despite his having received a discharge. The plaintiffs have a state-court judgment against the debtor for securities fraud, which the bankruptcy court determined to be excepted from discharge. They allege that the debtor fraudulently transferred assets to his sons to prevent these assets from being available to satisfy their securities-fraud claim. The plaintiffs assert two rationales for finding that the discharge injunction does not preclude them from proceeding against the debtor in the fraudulent transfer action. First, the plaintiffs argue that the fraudulent transfer suit is an action to collect a debt, namely the securities-fraud judgment, and that since this judgment is non-dischargeable the discharge injunction simply does not apply to the fraudulent transfer action. Second, they argue that they should be allowed to proceed against the debtor as a merely nominal defendant in order to seek recovery from third parties, the transferees of the allegedly fraudulent transfers, under 11 U.S.C. § 524(e) and the doctrine of *Owaski v. Jet Florida Systems, Inc. (In re Jet Florida Systems, Inc.)*, 883 F.2d 970 (11th Cir. 1989) (per curiam). We reject both of these arguments and affirm the District Court's ruling that the plaintiffs may not proceed against the

2

debtor. In the course of this opinion we also explain that the bankruptcy court has discretion in deciding whether to allow a suit against a discharged debtor under *In re Jet Florida* and that its decision on this issue should therefore be reviewed only for abuse of discretion.

## I.

The plaintiffs in this case are three corporations that first sued the debtor, Charles M. Morrison, Sr., in Alabama state court in 2006. Their complaint raised claims for common-law fraud and violations of the Alabama Securities Act. In 2012, the plaintiffs amended the complaint to add claims for fraudulent transfer under the Alabama Uniform Fraudulent Transfer Act (AUFTA) against Morrison and his sons, Charles M. Morrison, Jr., and Bradley P. Morrison, alleging that Morrison had given money and real estate to his sons in an effort to defraud his creditors. In particular, they alleged that Morrison was seeking to divest himself of assets from which the plaintiffs could recover on their securities-fraud claims.

Morrison filed for bankruptcy under Chapter 7 in August 2018. The bankruptcy court lifted the automatic stay to allow the plaintiffs' state-court case against Morrison to proceed, but stayed execution of any judgment. In November 2018, the plaintiffs also initiated an adversary proceeding against Morrison within the bankruptcy case, seeking a ruling that their claims in the state-court case would

3

not be dischargeable.  The bankruptcy court entered Morrison's discharge order the next month, with the adversary proceeding still pending.

In July 2019, the state-court case went to trial.  The state trial court entered judgment on the jury's verdict against Morrison on the common-law fraud and Alabama Securities Act claims, for an aggregate sum across the three plaintiffs of $1,185,176.  However, the court granted judgment as a matter of law dismissing the fraudulent transfer claim as to Morrison and Charles, and the jury found in favor of the defendants on the fraudulent transfer claim as to Morrison and Bradley.  The plaintiffs appealed the judgments denying liability on the fraudulent transfer claims to the Alabama Supreme Court.

In November 2019, the bankruptcy court granted summary judgment to the plaintiffs in the adversary proceeding, finding that the state-court judgment that the plaintiffs obtained on their securities-fraud claims was excepted from discharge under 11 U.S.C. § 523(a)(19) as a debt for the violation of state securities laws. Meanwhile, the plaintiffs filed a motion for the bankruptcy court to allow them to proceed with the fraudulent transfer claims, including by declaring that the discharge injunction did not prohibit them from continuing to name Morrison as a defendant on those claims.[1]  The motion would permit the plaintiffs to continue

---

[1] The motion also requested that the bankruptcy court determine that the fraudulent transfer claims were the property of the plaintiffs rather than the bankruptcy trustee.  This issue

4

prosecuting the appeal of the fraudulent transfer rulings in the state supreme court and, in the event that the appeal proved successful, to proceed against Morrison again upon retrial of the fraudulent transfer claims.

The bankruptcy court ruled in December 2019, however, that the discharge injunction barred the plaintiffs from proceeding against Morrison in the state courts on the fraudulent transfer claims. The court held that the *In re Jet Florida* doctrine was inapplicable to the case because Morrison would be burdened with the expense of defending the state-court suit if it were allowed to proceed with him as a party. Hence, the court denied the plaintiffs' motion with respect to Morrison, while indicating that they were free to proceed with the state-court appeal as to Morrison's sons.

The plaintiffs appealed this ruling to the District Court, which affirmed the bankruptcy court's decision. The District Court agreed that *In re Jet Florida* did not apply to the case for the same reason given by the bankruptcy court, and added as a further reason for this conclusion that proceeding against Morrison was not a prerequisite for the plaintiffs to be able to recover from his sons. The plaintiffs now appeal from the District Court's decision to this Court.

---

became moot when the trustee filed a no-asset report stating that there was no property of the estate available for distribution to creditors, thus abandoning any interest of the estate in the fraudulent transfer claims.

5

II.

When this Court reviews the decision of a district court engaged in appellate review of a bankruptcy court decision, we independently examine the bankruptcy court's factual and legal determinations using the same standards of review applicable in the district court.  *United Mine Works Combined Benefit Fund v. Toffel (In re Walter Energy, Inc.)*, 911 F.3d 1121, 1135 (11th Cir. 2018). Generally speaking, this means that we review the bankruptcy court's factual findings for clear error and that we exercise *de novo* review of legal conclusions whether by the bankruptcy court or the district court.  *Id.*; *see also Club Assocs. v. Consol. Cap. Realty Invs. (In re Club Assocs.)*, 951 F.2d 1223, 1228 (11th Cir. 1992).  In addition, as explained further in section III.B.2 below, the bankruptcy court's decision whether to permit suit against a discharged debtor under *In re Jet Florida* is to be reviewed for abuse of discretion.

III.

The plaintiffs make two arguments for why they should be allowed to proceed against Morrison on the fraudulent transfer claims: first that the fraudulent transfer suit is an action to collect a non-dischargeable debt and is thus not subject to the discharge injunction, and second that proceeding nominally against Morrison

6

is permitted under *In re Jet Florida*. We reject both of these arguments and therefore affirm the District Court's decision affirming the bankruptcy court.

### A.

We begin with the plaintiffs' first argument. According to 11 U.S.C. § 524(a)(2), with regard to any discharged debt, a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." The plaintiffs argue that because the discharge injunction applies only to discharged debts, if a particular debt is not discharged then any action to collect that debt is permitted. A fraudulent transfer action, they contend, is an action to collect a debt, with the plaintiffs' fraudulent transfer suit in particular being an action to collect on their state-court securities-fraud judgment against Morrison. Since the securities-fraud judgment was excepted from discharge, the plaintiffs conclude that their fraudulent transfer action is an action to collect a non-dischargeable debt and that the discharge injunction simply does not apply.

The plaintiffs' argument is incorrect. The reason is that a fraudulent transfer action is "not a mere 'collection action,'" but "rather a claim that requires an independent adjudication of liability based on statutorily-defined elements." *C &*

*M Inv. Grp., Ltd. v. Campbell*, 448 F. App'x 902, 905 (11th Cir. 2011).[2]  Under the

AUFTA, a creditor has a fraudulent transfer claim against a debtor for actual fraud

whenever "the debtor made the transfer with actual intent to hinder, delay, or

defraud any creditor of the debtor."  Ala. Code § 8-9A-4(a); *see Champion v.*

*Locklear*, 523 So. 2d 336, 338 (Ala. 1988); Ally Windsor Howell, *Tilley's*

*Alabama Equity* § 11:4, Westlaw (June 2020 update) (discussing actual and

constructive fraud in fraudulent transfer).  A fraudulent transfer can also be found

on the basis of constructive fraud, typically when the debtor makes the transfer

without receiving "reasonably equivalent value," under certain circumstances

specified in the statute.  Ala. Code §§ 8-9A-4(c), 8-9A-5.  Fraudulent transfer is a

distinct cause of action, and, at least in the case of actual fraud, a tort, *see Ex parte*

*Valley Nat'l Bank*, 297 So. 3d 1155, 1160 (Ala. 2019).[3]

The distinctness of a fraudulent transfer action is shown most clearly by the

availability of damages specific to that action.  While the remedy for fraudulent

transfer may be avoidance of the transfer or execution directly on the transferred

asset, *see* Ala. Code § 8-9A-7(a)(1), (b), under Alabama law it appears that a

fraudulent transfer can in some instances result in an award of compensatory

---

[2] We note that the unpublished opinions of this Circuit "are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2.

[3] In the state-court case the plaintiffs have alleged both actual fraud and constructive fraud as grounds for their fraudulent transfer claim.

damages in addition to the value of the creditor's underlying claim, *see Johns v. A.T. Stephens Enters., Inc.*, 815 So. 2d 511, 516-17 (Ala. 2001) (affirming compensatory damages award on conspiracy-to-defraud claim and holding that "the law permits damages awards in cases involving fraudulent conveyances"). It also appears that punitive damages may be available, at least in instances of actual fraud. *See SE Prop. Holdings, LLC v. Judkins*, No. 1:17-CV-00413-TM-B, 2019 WL 177981, at *8-9 (S.D. Ala. Jan. 11, 2019), *aff'd*, 822 F. App'x 929 (11th Cir. 2020); *see also Alliant Tax Credit 31, Inc v. Murphy*, 924 F.3d 1134, 1149-50 (11th Cir. 2019) (discussing compensatory and punitive damages under the Georgia Uniform Fraudulent Transfer Act).

The plaintiffs' reasoning, accordingly, fails to distinguish between the different potential debts involved in this case. The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12).[4] Debts and claims thus correspond. To be sure, fraudulent transfer claims must be based on an underlying claim by a creditor which the creditor could have sought to satisfy out of the asset that was transferred. *See Champion*, 523 So. 2d at 338 (one element of fraudulent transfer is "a conveyance of property out of which the creditor could have realized his claim or some portion thereof"). However, as a distinct cause of action, a

---

[4] A "claim" is in turn defined as, basically, a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5).

fraudulent transfer claim is a claim distinct from the claim on which it is predicated, in this case the plaintiffs' securities-fraud claims. Hence, the fraudulent transfer claim gives rise to a debt that is distinct from the predicate debt (here, the securities-fraud judgment), and a finding that the underlying debt is non-dischargeable does not mean that the debt arising from the fraudulent transfer is non-dischargeable.[5] In this case, while the securities-fraud judgment was held to be excepted from discharge, the plaintiffs' fraudulent transfer claims are not thereby excepted from discharge.

A fraudulent transfer action differs in this respect from execution on a judgment. Modes of execution and associated proceedings, such as writs of execution, attachment, judgment liens, and garnishment, do not constitute a new claim against the debtor or give rise to a new debt distinct from the judgment being executed. The reason for this, however, is that execution and associated proceedings are unlike ordinary causes of action against the debtor; they mostly are

---

[5] While the debt arising from the fraudulent transfer is conceptually distinct from the predicate debt, it could also be said to include the predicate debt; hence double recovery on a fraudulent transfer claim and the underlying claim is not permitted. *Cf. SE Prop. Holdings, LLC v. Gaddy (In re Gaddy)*, 977 F.3d 1051, 1059-60 (11th Cir. 2020) (explaining that fraudulent transfers did not give rise to a new debt that would allow for double recovery on that debt and the underlying dischargeable debt). *In re Gaddy* is not inconsistent with our holding here, first because the debt arising from a fraudulent transfer as we have characterized it would not permit double recovery, and second because the Court in *In re Gaddy* specifically did not address the import of the availability of additional damages for fraudulent transfer. It treated compensatory damages as irrelevant because they would not be available in that specific case, and it held that the plaintiff's argument about punitive damages had been forfeited. *Id.* at 1060.

10

not causes of action at all.  Because execution proceedings are ancillary to the prior

judgment, *cf.* 30 Am. Jur. 2d *Executions and Enforcement of Judgments* § 468

(2017), they do not require any allegation of wrongdoing but are instead based

simply on an executable judgment and the identification of property appropriately

subject to execution.  Modes of execution are generally *in rem*, in the sense that

they "confer a property interest on the judgment creditor that satisfies the

judgment," *Irwin v. O'Bryan*, 791 F. App'x 588, 593 (6th Cir. 2019).

Garnishment, by which a creditor may obtain property of the debtor or money due

to the debtor from a third party, has been described as *quasi in rem*, *see U.S.

Rubber Co. v. Poage*, 297 F.2d 670, 673 (5th Cir. 1962)[6]: it typically both gives

the creditor a lien on the property, *see* 30 Am. Jur. 2d *Executions and Enforcement

of Judgments* § 539 (2017), and constitutes an action brought *in personam* against

the garnishee.  Another exceptional case is that of an action to enforce a foreign

judgment, which is brought *in personam* against the debtor, but does not depend on

any conduct of the debtor and merely makes the judgment effective and executable

in the forum jurisdiction.  *See id.* §§ 579-583.

A fraudulent transfer action is not an execution proceeding, and thus is not a

'collection action' in any sense helpful to the plaintiffs' argument.  Fraudulent

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

transfer is a cause of action which can be brought against the debtor *in personam*. *See Parker v. Handy (In re Handy)*, 624 F.3d 19, 21-22 (1st Cir. 2010) (finding action to be *in personam*). Unlike execution proceedings, a fraudulent transfer action need not be based on a judgment at all, only an underlying claim by a creditor, but does require proof of wrongful or any rate legally disapproved conduct by the debtor (namely, actual or constructive fraud). A fraudulent transfer action does not necessarily confer a property interest on the creditor; rather, any *in rem* effect of the action is a matter of the remedy chosen by the court. While some remedies available under the AUFTA directly grant the creditor an interest in property, *see* Ala. Code § 8-9A-7(a), with other remedies the creditor must proceed to levy execution after judgment and only then would obtain such an interest, *see General Medicine, P.C. v. HealthSouth Corp. (Ex parte HealthSouth Corp.)*, 974 So. 2d 288, 297 (Ala. 2007) ("[I]n Alabama, a court's setting aside of a fraudulent transfer does not revest title in the debtor. Instead, the transferee continues to own the fraudulently transferred assets; the transfer is void only as to the creditor, and the creditor can execute on those assets directly."); Ala. Code § 8-9A-7(b) (providing, in section titled "Remedies of creditors," that "[i]f a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds"). Finally, the creditor is not always limited to recovering the amount of the underlying claim but

12

may be able to obtain further compensatory and punitive damages.  *See Johns*, 815 So. 2d at 516-17; *Judkins*, 2019 WL 177981, at *8-9.

The plaintiffs' first argument, then, is unsuccessful: a fraudulent transfer action does not function as an execution proceeding, and the fact that the underlying claim is non-dischargeable does not compel the conclusion that the fraudulent transfer claim is non-dischargeable.

## B.

The plaintiffs' second argument is that they should be allowed to proceed nominally against Morrison in order to seek recovery from his sons, the transferees, under the doctrine of *In re Jet Florida*.  Below we review the *In re Jet Florida* case and its requirements, consider the appropriate standard of review, and then explain why the plaintiffs' argument does not succeed.

## 1.

In *In re Jet Florida*, this Court ruled that the holder of a discharged claim, there a defamation claimant, could proceed nominally against the debtor for the purpose of recovering from the debtor's insurer.  883 F.2d 970.[7]  The Court began its analysis with 11 U.S.C. § 524(a)'s bar on collecting a discharged debt "as a

---

[7] The *In re Jet Florida* Court affirmed the decision of the district court on the basis of the district court's opinion, which it included as an appendix to its opinion.  We cite to that appendix.

personal liability of the debtor," noting that "the statutory language, on its face, does not preclude the determination of the debtor's liability upon which the damages would be owed by another party, such as the debtor's liability insurer." *Id.* at 972-73.  Likewise, § 524(e) provides that "[e]xcept as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."  Reading these two provisions together in the light of a body of persuasive case law, the Court stated that "the purpose of section 524 . . . is to protect the debtor and not to shield third parties such as insurers who may be liable on behalf of the debtor." *Id.* at 973, 975.

Moreover, the Court observed that the underlying policy of the bankruptcy discharge framework is to give debtors a "fresh start in economic life." *Id.* at 972, 975.  Prior case law indicated that this aim would not be frustrated by permitting the debtor to be sued nominally as a means of recovering from a third party because "the [d]ebtor and his property are not subject to any risk." *Id.* at 974 (alteration adopted) (quoting *Wimmer v. Mann (In re Mann)*, 58 B.R. 953, 956 (Bankr. W.D. Va. 1986)).  Conversely, as the Court remarked, the discharge injunction is not intended to allow an insurer to "escape its obligations based simply on the financial misfortunes of the insured," as would happen if the plaintiff's suit were not permitted to proceed. *Id.* at 975-76.  The Court noted that

14

"the insurer is not considered to be 'prejudiced' under section 524 when the permanent injunction is modified to permit a pending action to continue . . . , because the insurer's obligation remains commensurate with the underlying insurance contract." *Id.* at 975.

The Court expressed its "concern[]" that permitting such suit "would frustrate the fresh-start policy embodied in the Code in one way—by requiring the bankrupt to spend sums in defending this lawsuit." *Id.* at 976. It explained, however, that "the practical and economic realities" in the case would "compel the insurance company to defend the underlying action," because the insurer would be liable if the debtor were to default on the suit. *Id.* (emphasis omitted). Indeed, "the relationship between the parties in this action . . . virtually requires that Air Florida will be represented in the defamation action with no cost to it." *Id.* The Court was therefore satisfied that the possibility of any resulting expense to the debtor was "so remote that the fresh-start policy is simply not defeated." *Id.* The Court thus allowed the plaintiff's suit, concluding that "pursuant to section 524(e), a plaintiff may proceed against the debtor simply in order to establish liability as a prerequisite to recover from another, an insurer, who may be liable." *Id.*

We interpret *In re Jet Florida* as imposing two requirements that must be satisfied before a plaintiff may proceed nominally against a discharged debtor in order to recover from a third party. First, the debtor's status as a defendant in the

15

case must be a genuine prerequisite to the plaintiff's recovering from the third party: it must be the case that the plaintiff could not meet the legal conditions for such recovery without suing the debtor. Second, it must be sufficiently certain that maintaining suit against the debtor will not place any economic burden on the debtor, such that the debtor's fresh start will not be interfered with.

2.

Because this case is the first one in which this Court has reviewed a decision arising under the *In re Jet Florida* doctrine, we have not previously had occasion to decide the proper standard of review for such cases. We hold that a bankruptcy court's decision whether to permit suit against a debtor under this doctrine is to be reviewed for abuse of discretion. The reason is that the bankruptcy court's determination with regard to the second *In re Jet Florida* requirement—avoidance of economic burden on the debtor—must be taken to be discretionary.

There are a number of grounds for this conclusion. First, a plaintiff requesting leave to maintain suit against the debtor in a nominal capacity is seeking what is at least effectively a modification of the discharge injunction. *In re Jet Florida* referred to the court's action in granting leave as an action by which the discharge injunction "is modified." 883 F.2d at 975. Other courts have largely agreed that the discharge injunction can be modified, and they have considered

16

requests for permission to proceed against the debtor to recover from a third party under the heading of such modification. *Buke, LLC v. Eastburg (In re Eastburg)*, 447 B.R. 624, 633 (B.A.P. 10th Cir. 2011); *In re Shondel*, 950 F.2d 1301, 1307-09 (7th Cir. 1991); *In re Hendrix*, 986 F.2d 195, 198 (7th Cir. 1993). A decision as to whether to modify an injunction is always reviewed for abuse of discretion. *Epic Metals Corp. v. Souliere*, 181 F.3d 1280, 1281, 1283 (11th Cir. 1999); *see Horne v. Flores*, 557 U.S. 433, 447, 129 S. Ct. 2579, 2593 (2009).[8] Moreover, as the Supreme Court has recently explained in the discharge context, there is a "longstanding interpretive principle" that "[w]hen a statutory term is obviously transplanted from another legal source, it brings the old soil with it." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (internal quotation marks omitted) (quoting *Hall v. Hall*, 138 S. Ct. 1118, 1128 (2018)). In *Taggart*, the Court noted that the statutes pertaining to the discharge injunction "bring with them the 'old soil' that has long governed how courts enforce injunctions" and held that they accordingly incorporate traditional equity standards for determining civil contempt. *Id.* at 1801-02. Likewise, in this case, the same interpretive principle would

---

[8] Courts have also sometimes imposed conditions on the grant of permission to proceed against the debtor, e.g., that the third party cover all costs of the debtor's defense or that the plaintiff agree to pay for litigation expenses not borne by a third party. *See In re Catania*, 94 B.R. 250, 253 (Bankr. D. Mass. 1989); *West v. White (In re White)*, 73 B.R. 983, 986 (Bankr. D.D.C. 1987); *In re Mann*, 58 B.R. at 959; *see also FDIC v. Pappas (In re Pappas)*, 106 B.R. 268, 270 (D. Wyo. 1989). In such cases the action of the bankruptcy court should clearly be reviewed as an exercise of discretion.

17

suggest that a decision which has the effect of modifying the discharge injunction should be subject to abuse of discretion review, as has customarily been the case with decisions regarding injunctions. In addition, a decision to permit suit against the debtor under *In re Jet Florida* is functionally analogous to a decision to grant relief from the automatic stay, which is also reviewed for abuse of discretion. *In re Eastburg*, 447 B.R. at 630-31; *see Barclays-American/Business Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broad., Inc.)*, 871 F.2d 1023, 1026 (11th Cir. 1989) (standard of review for relief from stay).

Second, the bankruptcy court's determination as to whether it is sufficiently certain that the maintenance of suit will not place an economic burden on the debtor rests largely on questions of fact and involves the kind of case-specific inquiry that often calls for trial-court discretion. That an issue requires consideration of "multifarious" and "narrow" facts, *Pierce v. Underwood*, 487 U.S. 552, 561-62, 108 S. Ct. 2541, 2548 (1988), or demands that "many disparate factors . . . be weighed," *Norton v. Tallahassee Mem'l Hosp.*, 700 F.2d 617, 619 (11th Cir. 1983), has long been a chief reason for committing particular decisions to the discretion of the trial court. Indeed, the questions of fact implicated here may be quite delicate, insofar as they require a prediction of whether costs will be imposed on the debtor in the future rather than a determination of historical facts, and insofar as the possibility of even minor costs would be of significant relevance.

18

The court may need to consider such factors as the kind of third party from which the plaintiff wishes to recover (whether an insurer or some other party) and the financial condition of the debtor, as well as potential economic burdens other than the cost of obtaining defense counsel, such as court costs and the possibility that needing to stand trial might cause a debtor to lose his or her employment. The last-mentioned considerations were negligible or irrelevant in the case of the large corporate debtor in *In re Jet Florida*, but may bear compelling importance in the case of a bankrupt individual.

Finally, "exceptions to the general rule of discharge . . . are to be strictly construed in favor of the debtor." *United States v. Mitchell (In re Mitchell)*, 633 F.3d 1319, 1327 (11th Cir. 2011); *Kawaauhau v. Geiger*, 523 U.S. 57, 62, 118 S. Ct. 974, 977 (1998) ("[E]xceptions to discharge 'should be confined to those plainly expressed.'"). This principle would surely apply with even greater force where the exception, as here, is implied rather than being an express exemption in the statute. Hence, the bankruptcy court should have the discretion to deny permission to proceed against the debtor where matters might not be entirely clear but the court has reason to doubt that the debtor will be fully protected against burdens arising from the plaintiff's suit.

The appropriate standard of review is consequently abuse of discretion. A trial court "abuses its discretion if it applies an incorrect legal standard, follows

19

improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019). A trial court may also abuse its discretion by "commit[ting] a clear error in judgment." *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). Notably, "[i]n making these assessments," we review the trial court's "purely legal determinations *de novo*." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). The issue posed by the first *In re Jet Florida* requirement, i.e., whether maintaining suit against the debtor is a prerequisite to recovering from the third party, is a pure question of law. Thus, as part of the abuse of discretion review, the bankruptcy court's resolution of this issue is to be reviewed *de novo*. However, the determination of whether it is sufficiently certain that the proposed litigation will not impose an economic burden on the debtor is committed to the bankruptcy court's sound discretion.

3.

We now proceed to explain that, in the case at bar, the bankruptcy court did not abuse its discretion in denying the plaintiffs' request for permission to maintain suit against Morrison under *In re Jet Florida*. The plaintiffs did not satisfy the prerequisite requirement and thus were not eligible for such permission as a matter of law. Furthermore, the bankruptcy court properly exercised its discretion in

20

determining that the proposed litigation could impose economic burdens on Morrison and hence did not meet the second *In re Jet Florida* requirement.

a.

With regard to the first requirement, Morrison's presence as a defendant in the plaintiffs' state-court lawsuit was not a prerequisite for the plaintiffs to recover from Morrison's sons. Under the AUFTA, a fraudulent transfer plaintiff can bring suit against the transferee directly. *See* Ala. Code § 8-9A-8(b) (providing that judgment may be entered against the first transferee and certain subsequent transferees). While the transferor is "a proper party" to the fraudulent transfer action, Alabama law is clear that "[i]f the transfer passes the legal title, the grantor is not a necessary party." *Gilmore, Farris & Assocs., Inc. v. Pickens Cnty. Nursing Home, Inc.*, 298 So. 2d 604, 606 (Ala. 1974). Proceeding against Morrison thus is not a prerequisite for recovery from the transferees.

The plaintiffs argue that naming Morrison as a defendant would make his deposition testimony admissible in evidence as party admissions and that this would be useful if the fraudulent transfer claims were to be retried and Morrison were to be unavailable as a witness at trial. If Morrison were to be unavailable, however, it appears that the relevant statements could still be admitted as statements against interest. *See* Ala. R. Evid. 804(b)(3). More importantly, these

21

evidentiary matters pertain only to how easy or difficult it would be for the plaintiffs to prove their case in the contemplated litigation; they are irrelevant to the question at hand, which is whether proceeding against Morrison is a legal condition for recovery. *See also In re Czuba*, 146 B.R. 225, 230 (Bankr. D. Minn. 1992) (determining that the debtor was not a necessary party even though the debtor's testimony might be needed to prove or disprove the plaintiff's allegations and the debtor's actions were the basis for the plaintiff's claims).[9]

b.

With regard to the second *In re Jet Florida* requirement that the debtor be protected from economic burdens, the bankruptcy court found that allowing the plaintiffs to maintain suit against Morrison would impose an economic burden on him and frustrate the fresh start offered by his discharge. While the court did not frame its decision as a discretionary one, it is evident that even if it had taken itself as having discretion on this issue, it would not have exercised its discretion to say that it was sufficiently certain that the lawsuit would not place an economic burden on Morrison. We thus proceed to review the court's determination for abuse of discretion.

---

[9] Indeed, forcing a debtor into litigation where the debtor is not a necessary party to the action would seem to be a species of the very debtor harassment that the discharge injunction was designed to prevent, *see In re Jet Florida*, 883 F.2d at 972 (quoting H.R. Rep. No. 91-1502, at 1-2 (1970)).

22

No insurer is involved in this case, and the bankruptcy court determined that Morrison would bear the expense of defending himself in the fraudulent transfer action. The plaintiffs have argued that Morrison would be free to default on the suit and that his sons would provide for his defense. The bankruptcy court, however, found the argument that Morrison could rely on his sons for his defense to be "speculative at best," noting that Morrison had failed to file a brief in the plaintiffs' related adversary proceeding concerning the dischargeability of the securities-fraud judgment "at least in part[] because he did not have the resources to pay bankruptcy counsel to prepare the same." And while insurers generally have ample resources to facilitate the defense of suits in which they are interested, the same cannot be assumed to be true of Morrison's sons, as to whom we have no information to suggest that they are particularly well-positioned to fund counsel.[10] In addition, if Morrison were to default on the state-court appeal, then in the event that the plaintiffs prevailed court costs could be taxed against him. Ala. R. App. P. 35(a).

Accordingly, there are sufficient grounds from which to determine that it is not sufficiently certain that the proposed litigation would not impose an economic burden on Morrison. Instead, there is reason to think that the litigation could

---

[10] Morrison also has an interest in doing what he can to safeguard his sons' financial well-being which an insured generally does not have as to his or her insurance company.

23

interfere with the fresh start to which he is entitled.  Consequently, the bankruptcy court was within its discretion in determining that the plaintiffs' suit did not come within the *In re Jet Florida* doctrine in this regard.

For this reason, as well as the independent reason that the plaintiffs did not meet the prerequisite requirement, the bankruptcy court did not abuse its discretion in denying permission to proceed against Morrison as a means of recovering from his sons.

## IV.

We conclude that the bankruptcy court did not err in rejecting the plaintiffs' request to proceed against Morrison under either of the theories that they have advanced.  Its decision was properly upheld by the District Court.

**AFFIRMED.**