**AMERICAN FIDELITY & CASUALTY CO.,**
Appellant,

v.

Melvin Chester JOHNSON and Lonnie Powell, DBA Powell Farms,
Appellees.

Court of Appeals of Kentucky.

June 10, 1960.

R. W. Keenon, Stoll, Keenon & Park, Lexington, W. Fred Hume, Providence, for appellant.

Woodward Hobson & Fulton, Louisville, Thomas L. Withers, Dixon, for appellees.

STANLEY, Commissioner.

William E. Cloyes and his wife were killed in a collision between their automobile and a truck owned by Lonnie Powell, dba Powell Farms, and driven by his employee, Melvin C. Johnson, in Webster County on April 14, 1956. The truck was being operated under a "lease agreement" with Harper Motor Lines, hereinafter Harper. Actions for the wrongful death of Mr. and Mrs. Cloyes against the three parties were settled by Harper's liability insurer, the appellant, American Fidelity and Casualty Company, for $12,500. Harper had entered cross-claims against Johnson and Powell for indemnity or contribution. Eventually an order was entered subrogating the appellant to all Harper's rights and permitting it to prosecute the cross-actions in its name as the real party in interest. American sought indemnity or, alternatively, contribution from Johnson and Powell. Judgment was entered dismissing American's claims and it appeals.

The essential question is whether, as between Powell and Harper, Johnson, the driver of the truck, was the agent of his employer, Powell, or the agent of Harper under the lease agreement and the circumstances of the use of the truck at the time of the accident. The answer determines upon which party the ultimate burden of responsibility for Johnson's negligence rests. Irrespective of the particular purpose of the appellant's insurance contract with Harper as being, as it contends, only to protect the public because of the requirements of the federal law and regulations, the real question in the case is the relationship between Harper and Powell with respect to liability for Johnson's act of negligence. The appellant's adjudged right of subrogation to Harper is and must be based upon that relationship.

Powell operated vegetable farms in Alabama and Wisconsin and used his own trucks in transporting the products between the farms and to market. Johnson had taken a load of potatoes to Antigo, Wisconsin. It appears to have been the custom of Powell's drivers to solicit cargoes going South in order that the truck might not return empty. On this occasion Johnson, on his way to Wisconsin, had made such solicitation of Harper in Chicago. Harper was an interstate common carrier with headquarters at Elberton, Georgia. Powell was not authorized to use his trucks as such carrier. Harper had a contract

with a patron to transport a load of cheese from Hustisford, Wisconsin, to Chattanooga, Tennessee. Its interstate permits were for operation on irregular routes between Chicago and Birmingham, Alabama, and from that city to points throughout the Southland, including Chattanooga. Harper directed Johnson to get the load of cheese and take it to Chattanooga. For this service, an instrument styled, "One trip motor vehicle lease agreement" was executed by Harper's Chicago agent and Johnson. The revenue would be divided 30% to Harper and 70% to Powell. The agreement was on a standard form furnished by Harper. The accident occurred during the course of this trip and transportation.

The appellant concedes Harper was liable to members of the public by reason of its permit as a common carrier issued by the Interstate Commerce Commission, which requires that the public be protected. Such requirement is also contained in 49 U.S.C.A. § 315. Appellant contends that the provision in the lease agreement with respect to indemnity is but a restatement of an obligation already imposed by that federal law and adds nothing to its obligation to the public. But appellant denies that this liability to the public relieved Powell of ultimate responsibility for the negligence of his employee, Johnson. It contends that the issue is to be resolved by the principles of the law of master and servant.

The lease agreement specifies:

"2. Term of this lease shall be from the date thereof, as above written, until arrival at the destination stated and the discharge of the lading. Immediately upon discharge of its lading, this agreement will terminate and the lessee will deliver said vehicle into possession of the lessor or its agent at the point of discharge of its cargo.

"3. During the term of this Lease, the foregoing equipment is under the direction and control of Harper Motor Lines, and it shall be operated only by authorized persons, employees of the Lessee.

"6. The Lessor further agrees to indemnify and save harmless the lessee against any claim arising from shortage and-or damage to the lading while being transported in said vehicle. The lessee will provide the required public liability and property damage insurance, also the necessary cargo insurance as required by statute or regulation. The Lessee will not provide fire, theft or collision insurance on the equipment described herein."

Thus, the contract provided that the lessor, Powell, should be ultimately responsible to the lessee, Harper, for shortage in, or loss of, or damage to the cargo. The lease further provided that the lessor guaranteed the motor vehicle against defect; that he would be liable for any damage to the truck; and that he would bear the maintenance and operating expenses while it was being used by the lessee. The contract between the parties was therefore, specific in its exemption of liability of Harper as to damage to the vehicle and cargo. But the contract contained no exemption or qualification or limitation as to liability for injury to property or lives of other persons caused by the operation of the truck. While the indemnity insurance against such liability was required by the federal law and regulations, there is nothing in the lease agreement that indicates the same responsibility was not also for the protection of the lessor who had turned the machine and driver over to the lessee to be used in its own business.

■ The application of the law of master and servant where a servant is lent or permitted by his master to perform services for another, and the question of who is responsible for his acts during the performance of the particular service, depend on the particular facts and circumstances. Restatement, Agency, § 227. The variable-

ness of the many conditions makes it difficult sometimes to determine the question. See Annotations, "Liability under respondeat superior doctrine for acts of operator furnished with leased machine or motor vehicle." 17 A.L.R.2d 1388. The cases in which a lessee was held liable for injurious negligence of a driver supplied by the lessor to drive a leased truck are collected at page 1402, et seq. Particular attention is called to Note of American Fidelity and Casualty Co. of Richmond, Va. v. Zurich General A. & L. Insurance Co., D.C.S.C. 1947, 70 F.Supp. 613. As stated in 5A Am. Jur., Automobiles and Highway Traffic, § 643, the facts and circumstances may "justify the conclusion that the driver furnished with the vehicle was under the control and direction of the lessee, in which event the lessee, and not the owner, is liable for the driver's negligence." Our cases are in accord. Bowen v. Gradison Construction Co., 236 Ky. 270, 32 S.W.2d 1014; Atlas Coal Co. v. Bryant, 263 Ky. 626, 93 S.W.2d 5; Kern v. Chicago Bridge and Iron Co., D.C.W.D.Ky., 115 F.Supp. 85. In this transaction Harper could not use Powell's truck or driver in its business as an interstate common carrier without adopting both of them as a part of its fleet of vehicles and operators. This it did by the terms of the lease agreement and the directions given the driver.

■ Harper's Chicago representative, who executed the contract, testified to the directions given Johnson, the truck driver, as to where he should pick up the cargo and where to "check in" at Harper's depot in Birmingham, Alabama. He was then to take the load to Chattanooga, Tennessee, and deliver the cargo to the consignee. This indirect way of reaching that terminus was required because Harper had no permit to go directly. Harper's agent gave Johnson directions "to operate under and obey the rules of the Interstate Commerce Commission, as to hours to be worked and hours to be off duty, and to watch the speed limits and to obey the laws of the various states." The driver was furnished with

stickers and other tags for the truck showing the transportation was Harper's. He was given a paper styled, "Instructions to Drivers and Operators of Leased Equipment," which contained specific rules and directions of conduct. It is true that no specific route was designated between the three termini, or a routing given through Webster County, Kentucky. But the driver followed U. S. Highway No. 41, which is the usual and direct route from Chicago to the South, and it passes through that county.

This assumption of the control of the driver of the truck, as well as the terms of the lease of the equipment with its driver, distinguishes the several cases cited by the appellant to sustain its argument that its insured's lessor, Powell, should be held ultimately responsible for Johnson's act of negligence.

The case of American Fidelity and Casualty Co. v. Simmons, D.C.N.C., 153 F. Supp. 658, 660, affirmed 4 Cir., 253 F.2d 634, is directly in point. Webb Transfer Lines, an interstate common carrier, had hired Simmons' truck and a driver for a certain trip. While being operated under the contract, the truck, being driven by Simmons' employee, collided with an automobile and caused damage. The present appellant was Webb's insurance carrier. It paid a large sum in settlement of a suit for damages against Webb, and then sought indemnity by way of subrogation against Simmons as being primarily liable for the damages negligently caused in the operation of the truck. While the contract between the parties appears to be much like that in the instant case (although the extract in the opinion is not so comprehensive as this contract), the court stated it was unnecessary to decide the rights between Webb and Simmons in the absence of a contract because the lease clearly defined their respective rights. In deciding the case, the District Court said:

"Both reason and law deny Webb recourse for indemnity against Sim-

mons due to the terms of the contract between them. American's cause of action is predicated upon the doctrine of subrogation to the rights of its insured. Under the facts in this case it would be just as appropriate to make Webb indemnify the insurance as it would to exact it from Simmons. To all intents and purposes, and especially in respect to public liability insurance required of carriers for hire in interstate commerce, the hired equipment and the driver thereof are the property and agent of Webb. [Citations of North Carolina cases.] * * * When viewed in the light of the other cases cited above, the decision does not abrogate the general principle that the driver of the leased vehicle is the agent of the lessee, if the vehicle, at the time of the accident, is actually performing an act under the control and direction of lessee, and this court is required to apply the law of this State in this case. Simmons is not liable to Webb for the negligence of Wall, the driver."

The appellate court, in an opinion by the late Judge John J. Parker (a master of our craft), stated its "thorough accord" with the opinion of the District Court and gave added reasons and authority for affirming the judgment. American Fidelity and Casualty Co. v. Simmons, 4 Cir., 253 F.2d 634.

We have examined the many cases cited by the appellant and find them either not in point or distinguishable by the factual conditions or terms of the contracts.

Our conclusion is that, whether the case be adjudged upon the terms of the lease agreement or upon general principles of the law of master and servant, Harper was liable for the negligent operation of the leased truck; and the appellant under its blanket insurance policy issued to Harper has no right to be reimbursed by Powell.

Judgment affirmed.