**Carl A. ARNETT, Appellant,**

v.

**Oralea THOMPSON, Appellee.**

**Carl A. ARNETT, Appellant,**

v.

**Edna Caudill ARNETT et al., Appellees.**

**Carl A. ARNETT, Appellant,**

v.

**Wilson MULLINS, Appellee.**

Court of Appeals of Kentucky.
June 21, 1968.

Joe Hobson, Prestonsburg, for appellant.

James S. Hogg, Jackson, S. Russell Smith and Kirby A. Scott, Louisville, for appellee Oralea Thompson.

G. C. Perry III, Paintsville, for appellee Edna Caudill Arnett.

CULLEN, Commissioner.

Carl A. Arnett and Edna his wife, residents of Ohio, while visiting relatives in Kentucky were involved in an automobile accident in which the Arnett automobile, driven by Carl, collided with the automobile of Wilson Mullins in which Oralea Thompson was one of the passengers. Carl, Edna and Miss Thompson each sustained injuries and both cars were damaged. Miss Thompson sued Carl and Mullins. Edna, in a separate action, also sued Carl and Mullins. In a third action, Carl sued Mullins for personal injuries and property damage, and Mullins counterclaimed for property damage. The three actions were consolidated for trial. The jury awarded Miss Thompson $20,000 against Carl and awarded Edna the same amount against Carl. It awarded Mullins $630 on his property damage counterclaim against Carl. It exonerated Mullins from all claims against him. Separate judgments were entered accordingly.

Carl Arnet appealed from all three judgments. However, he has moved to dismiss his appeal as to Mullins, and we here-by sustain that motion. This leaves for determination the appeals as to Edna Arnett and Oralea Thompson. We shall first discuss the appeal from Edna's judgment.

Carl's primary argument is that since he and Edna are residents of Ohio the law of Ohio should govern to determine his liability to her; that under Section 4515.02 of the Ohio Revised Code an automobile host is not liable for injury to his guest unless the injury was caused by willful or wanton misconduct (of which Carl was not shown to be guilty), and that under the common law of Ohio a wife cannot sue her husband for a tort. See Lyons v. Lyons, 2 Ohio St.2d 243, 208 N.E.2d 533. These arguments were presented to the trial court as grounds for a directed verdict in favor of Carl, and he maintains that the trial court erred in not sustaining his motion on those grounds.

Prior to the decision of this court in Wessling v. Paris, Ky., 417 S.W.2d 259, Kentucky had adhered firmly to the lex loci rule, under which it was held that the law of the state where an automobile accident occurs governs the rights of the parties. See Ansback v. Greenberg, Ky., 256 S.W.2d 1. If applied in the instant case, it would mean that Kentucky law would govern because the accident happened here. However, in *Wessling* the court decided that the lex loci rule should not *always* apply, and in that case the court determined that it was proper to apply Kentucky law to a suit between Kentucky residents for damages arising out of an automobile accident in Indiana, where all interest involved in the situation, other than the mere place of the accident, were Kentucky interests. The result of the holding was that Indiana's host-guest law, which requires a showing of gross negligence, did not apply to bar recovery.

Some of the language in *Wessling* may be construed to indicate that this court *abolished* the lex loci rule and substituted in its place the "most-significant-contacts" theory of Tentative Draft No. 9, Restate-

ment (Second), Conflict of Laws, section 379(a). Under this theory the interests of each state would be *weighed* in each case, and the law applied of that state which had the greater significant relationship. However, the opinion in *Wessling* states in clear terms that the application of the "most-significant-contacts" theory will be limited to the very clear cases. The opinion further suggests that public policy as to the particular law involved may enter into the consideration.

 Upon further study and reflection the court has decided that the conflicts question should not be determined on the basis of a *weighing* of interests, but simply on the basis of whether Kentucky has *enough* contacts to justify applying Kentucky law. Under that view if the accident occurs in Kentucky (as in the instant case) there is enough contact from that fact alone to justify applying Kentucky law. Likewise, if the parties are residents of Kentucky and the only relationship of the case to another state is that the accident happened there (as *in Wessling*), there is enough contact with Kentucky to justify applying our law. The fact that we will apply Kentucky law where Kentucky people have an accident in Ohio or Indiana does not require that we apply Ohio or Indiana law where people of one of those states have an accident here, because the basis of the application is not a *weighing* of contacts but simply the existence of *enough* contacts with Kentucky to warrant applying our law.

Much has been written on this subject. Many of the authorities are listed in a footnote in *Wessling*. Additional references are Babcock v. Jackson in Kentucky, Sedler, 56 Kentucky Law Journal 27; Annotation, 96 A.L.R.2d 973; Wisconsin Guest-Out of State Accident, Out of State Guest-Wisconsin Accident, Charles, Wisconsin Bar Bulletin, April 1968, p. 27.

In Wilcox v. Wilcox, 26 Wis.2d 617, 133 N.W.2d 408, and Heath v. Zellmer, 35 Wis.2d 578, 151 N.W.2d 664, the Wisconsin Supreme Court reached substantially the same result as we are reaching, although expressing it in terms of weighing of contacts *plus* policy. While Wisconsin so far has chosen to yield, on a policy basis, to the law of another state prescribing inter-spousal immunity, where a husband and wife from the other state have an accident in Wisconsin, see Haynie v. Hanson, 16 Wis.2d 299, 114 N.W.2d 443, Judge Charles has predicted in his article in the Wisconsin Bar Bulletin above cited that the Wisconsin court soon will apply Wisconsin law even in inter-spousal immunity cases.

In his article in the Kentucky Bar Journal, above cited, Professor Sedler indicates his personal view that the principles of *Wessling* should require that the Kentucky court apply Ohio law in a case such as the one before us. However, he states that the fact situation we have before us is the most troublesome of any to him, and he recognizes that some of the authorities would approve our applying Kentucky law in the instant case aside from the lex loci rule.

 We find nothing in the numerous authorities studied to convince us that the view we are adopting in this opinion is not a valid one. It is true that a number of state courts in recent decisions have trended towards holding that on the inter-spousal immunity question the law of the state of domicile should be applied, because that state is the only one concerned with the potential family problems that are the basis of the inter-spousal immunity doctrine, and as a matter of comity the law of the domiciliary state should be deferred to. See Annotation, 96 A.L.R.2d 973. However, we are of the opinion that if the lex loci rule was a valid basis in the past for this court not to recognize the inter-spousal immunity law of another state, in a suit here arising from an accident here, then the rule we now are adopting (of sufficient-enough contacts) is an equally valid basis. Particularly is this so since our court does not consider sound the claimed potential of

family disunity that is the basis for the inter-spousal immunity doctrine, and since the policy of the law of this state is to allow recovery for injuries or death resulting from negligence. See *Wessling*.

■ So we conclude, on the conflicts question, that the trial court properly applied Kentucky law rather than Ohio law in this case.

The appellant suggests that this court should overrule Brown v. Gosser, Ky., 262 S.W.2d 480, 43 A.L.R.2d 626, and return to our former rule barring tort actions by one spouse against the other. We are not so persuaded.

■ Another contention is that appellant should have been granted a directed verdict on Edna's claim because she made a judicial admission that appellant was not negligent. The alleged judicial admission consisted of her written endorsing of concurrence in the truth of a *pre-trial* statement of her husband in which he set forth his version of the accident placing all of the fault on Mullins. This endorsement of course could not constitute a judicial admission because such an admission by definition is "a formal act done in the course of judicial proceedings." Sutherland v. Davis, 286 Ky. 743, 151 S.W. 2d 1021. Her endorsement was not done in the course of judicial proceedings, but was extra-judicial. The same is true of an oral statement which Edna made to a policeman after the accident. Certain statements made by Edna in her *testimony on the trial,* claimed also to constitute judicial admissions, did not in fact purport to absolve her husband of negligence.

■ The contention is made that the trial court erred in permitting a doctor, who examined Edna Arnett for purposes of trial, to testify as to the history she gave him. The strict rule set forth in Great Atlantic & Pacific Tea Company v. Eiseman, 259 Ky. 103, 81 S.W.2d 900, which is relied upon by the appellant, was considerably relaxed in Mary Helen Coal Corp. v. Bigelow, Ky., 265 S.W.2d 69, and it is clear that the doctor may express an opinion based on subjective symptoms of the patient, although he may not relate statements or voluntary acts of the patient as a means of bolstering his testimony. As we read the evidence, the only statements of the patient related by the doctor were as to facts which were fully brought out by Edna in her own testimony, or by other witnesses, and there was no "bolstering" involved. Furthermore, there was evidence that Edna had gone to the doctor for a course of treatment, not merely to obtain his testimony for the trial.

■ The appellant complains of leading questions asked of Edna's doctor. We do not consider the particular questions to be objectionably leading, considering the difficulties of making medical testimony understandable to the jury. And the appellant does not cite to us any case in which the asking of leading questions of a witness was held of itself to constitute *reversible* error.

The appellant cites several instances of admission of allegedly incompetent testimony. We find them to be of no real materiality.

■ In cross-examination of Edna Arnett appellant's counsel made extensive use of her husband's statement, hereinbefore mentioned, which she had endorsed as a true statement of the circumstances of the accident. The use was to impeach her testimony by showing prior contradictory statements. Later in the trial, when the appellant (Carl Arnett) was himself on the stand, the appellant undertook to offer the statement in evidence. Objection to its admission was sustained, and appellant now maintains that the ruling was error, on the ground that the statement, having been endorsed by Edna, constituted an admission against interest by her and as such was admissible in evidence. This position is not valid because it was not offered as an admission by Edna against her interests. The obvious purpose of the offer was to

have the statement considered by the jury as *supporting Carl's testimony* on *the trial.* Of course it was not an admission against interest *by Carl*—as to him it was a self-serving extra-judicial statement, clearly not admissible. We think, from the standpoint of timing alone, the trial court properly refused to admit the statement in evidence.

■ The contention is made that the instructions were erroneous in allowing Edna to recover for impairment of her power to earn money. This is on the theory that she had quit her job six months prior to the accident and was then not able to continue work because of general poor health. However, there was a conflict of evidence as to her pre-accident physical condition, and there was evidence that she had quit her job to take care of a sick child and that before the accident she was able to and intended to go back to work. We think the evidence warranted the instruction. It is argued that the evidence did not show that Edna's physical ability to earn money was in fact impaired by the accident, but in our opinion the testimony of Dr. Hunter warranted a finding that she had sustained disabling injuries in the accident.

■ Finally, as to Edna's judgment, it is argued that the damages of $20,000 are excessive. Edna was 49 years of age. She had worked at a wage of $110 per week, in employment which the evidence would warrant a finding she could no longer perform after the accident. Her medical expenses amounted to $379.00. She endured pain and suffering from a nerve pressure and from an impaired lumbosacral intervertebral disc. We think the award, though liberal, was not so excessive as to indicate passion and prejudice.

So much for the Edna Arnett judgment. We now come to the alleged errors respecting the Oralea Thompson judgment.

■ It is first contended that the appellant should have had a directed verdict on the Thompson claim because there was insufficient proof that appellant was neg-ligent. The accident occurred when the Arnett and Mullins automobiles, coming into a curve from opposite directions on a snowy night, collided. The testimony was conflicting as to which car was on the wrong side of the road. There was evidence which would warrant the finding that Arnett was on the wrong side. Therefore, Arnett was not entitled to a directed verdict.

■ Error in the admission of evidence is argued in that the court permitted a doctor who had examined Miss Thompson for the purpose of trial to relate the history she had given him. The answer hereinbefore given in this opinion to a similar contention respecting Edna Arnett's claim is equally applicable here. In addition, the evidence shows clearly that Miss Thompson was receiving treatment as a regular patient from the doctor and had not gone to him solely to qualify him to testify.

■ It is argued that there was no showing of impairment of earning capacity of Miss Thompson such as to warrant the instruction allowing recovery for that. The claim is that the evidence did not show she had any permanent physical impairment, and in any event she had no earning capacity before the accident because she had never had a job. In our opinion the medical evidence of her doctor, to the effect that she had sustained an injury to her neck and thoracic lumbar spine that was "certain to become chronic," was sufficient to sustain a finding of permanent injury. And of course the fact that she, at 19 years of age, was just out of high school and had never had a job does not mean that she could not sustain a loss of earning capacity. See Spurlock v. Spurlock, Ky., 349 S.W.2d 696.

■ A related argument is that the damages awarded Miss Thompson are excessive. She was rendered unconscious for two days, suffers from headaches, and sustained injuries to her neck and spine which she says cause her pain and limit her motion and which her doctor says "is a per-

manent thing." In our opinion the award is not excessive.

 Finally, complaint is made that counsel for Miss Thompson made prejudicially improper remarks in his closing argument to the jury. On reading the argument we find that one part of which complaint is made was not improper, and that the impropriety of the other part was cured by admonitions, retractions and apologies.

The appeal as to Wilson Mullins is dismissed.

On the appeals as to Oralea Thompson and Edna Arnett the judgments are affirmed.

All concur except OSBORNE, J., who concurs in the results reached herein but not for the reasons stated. In his opinion the Wessling case is wrong and the court's opinion in the instant case demonstrates it. See Conflicts of Law—Choice of Law in Tort Cases—A Critique, Moreland, 56 Kentucky Law Journal 5.