**Troy Howard HINTON and Eva L. Hinton, Plaintiffs,**

v.

**Luther HOSKINS et al., Defendants.**

**No. 1670.**

United States District Court, W. D. Kentucky, Bowling Green Division.

March 24, 1976.

Joseph R. Huddleston, Bowling Green, Ky., Wm. K. Bell, Huntsville, Ala., for plaintiffs.

Jesse L. Riley, Jr., Russellville, Ky., for plaintiff on counterclaims.

John David Cole, Bowling Green, Ky., for defendants Hoskins and Sizemore.

Raymond O. Harmon, Louisville, Ky., for defendant Aetna Freight Lines.

## MEMORANDUM OPINION

BRATCHER, Chief Judge.

This matter stands before the Court pursuant to 28 U.S.C. 2201 and Rule 57 of the Federal Rules of Civil Procedure. The action arises from an automobile-tractor-trailer collision that occurred November 22, 1972, on Interstate 65 south of Bowling Green, Kentucky. Negligence is no longer an issue as the defendants, Sizemore and Aetna Freight Lines, Inc., each have contributed one-half of the settlement of the plaintiff's claims. The question to be resolved now is the ultimate responsibility as between Sizemore and Aetna Freight Lines, Inc.

The tractor-trailer was owned by Robert Sizemore and under lease to Aetna Freight Lines, Inc., an interstate motor carrier. In addition to the vehicle, the lease called for Sizemore to furnish the driver and to pay his salary as well as all the expenses incurred on the trip. Sizemore was to receive 75% of the gross, of which he would keep 50% and pay 25% to the driver, Luther Hoskins. Aetna retained the remaining 25%. If a load could not be found for the return trip, Sizemore would get no additional compensation from Aetna.

Hoskins began the trip to Middletown, Ohio by picking up a load of steel to be delivered to Grenada, Mississippi. He was returning empty to Middletown when the accident occurred. The manifest had instructed that he report to the Memphis terminal of Aetna Freight Lines, Inc. to see if another load was available. However, Hoskins did not physically drive to the terminal and he is not sure whether he called in. As there were no telephone logs kept and since the terminal manager at the time is now deceased, there is no way to confirm if he did or did not call the terminal. While it was common practice to stop at a terminal and wait for a load, it appears that there was no steadfast rule to this effect, thus drivers were to a great extent on their own as to whether to stop at the various terminals along their route. It has also been established that the Memphis terminal was to have been closed the day following the accident, as it was Thanksgiving, and Hoskins readily admitted he was anxious to be with his family for the holiday.

Aetna Freight Lines contends that since Luther Hoskins, the defendant Sizemore's employee, had finished his work for Aetna and was headed home to his family for the Thanksgiving holiday, Aetna was no longer legally responsible for Hoskins' actions. In the alternative, Aetna argues if it is held liable under the franchise rule, it should be allowed indemnification from Sizemore pursuant to the terms of the lease agreement.

Sizemore maintains that Hoskins was still within the scope of the lease agreement with Aetna when the accident occurred and, by virtue of the franchise rule, Aetna is liable as a matter of law for the negligence of Hoskins. In addition, Sizemore says that because Hoskins was operating within the scope of the lease, Aetna cannot receive indemnification pursuant to the lease agreement.

■ Before deciding the question of liability, however, the Court must first resolve the choice of law problem. As jurisdiction was based on diversity of citizenship, the Court must look to the forum state's choice of law rules to decide what state's substantive law will govern. *Miller v. Davis*, 507 F.2d 308 (6th Cir., 1974). Although the Court is deciding the rights of the parties under their insurance contracts, the basic inquiry is more in the nature of a tort question in that the contract provisions clearly make liability contingent on whose agent Hoskins was at the time of the accident. In *Wessling v. Paris*, 417 S.W.2d 259 (1967), the Kentucky Court of Appeals reversed its previous policy of applying the law of the state where the tort was committed in favor of the theory of "most significant contacts". However, in 1968 the Court modified its position in *Arnett v. Thompson*, 433 S.W.2d 109, by holding that a conflicts of law question should be resolved on the basis of whether Kentucky had enough contacts to justify applying Kentucky law. In *Arnett* it found that the mere fact the accident happened in this state was enough to justify the application of Kentucky law. *Foster v. Leggett*, 484 S.W.2d 827 (Ky. 1972), in this Court's opinion, did not materially alter this position; and, therefore, since the accident happened in Kentucky, the law of Kentucky must be applied.

In *American Fidelity & Casualty Co. v. Johnson*, 336 S.W.2d 351 (Ky.1960), the Court said that:

> "[W]here a servant is lent or permitted by his master to perform services for another, and the question of who is responsible for his acts during the performance of the particular service, depend on the particular facts and circumstances."

A case that the Court felt was directly in point, *American Fidelity & Casualty v. Simmons, 153 F.Supp. 658 (M.D.N.C. 1957), affirmed, 253 F.2d 634 (4th Cir., 1958), contains a passage that seems to be the essence of the law in this area:*

> "[T]he driver of the leased vehicle is the agent of the lessee, if the vehicle, at the time of the accident, is actually performing an act under the control and direction of lessee."

The franchise rule that Sizemore relies on so heavily, *Hodges v. Johnson*, 52 F.Supp. 488 (W.D.Va., 1943), can be employed only if the driver is "performing franchise activities". Thus, the decisive question is whether or not the driver Hoskins was returning to Middletown, Ohio within the scope of the lease between Sizemore and Aetna Freight Lines, Inc.

■ The testimony appears to indicate that Hoskins was not within the scope of the lease at the time of the accident; and, therefore, Sizemore's insurance carrier, rather than Aetna's, should be responsible for the losses. The manifest directed Hoskins to report to Aetna's Memphis terminal after he unloaded in Grenada, Mississippi. However, it seems well established that Hoskins was not strictly required to report to Memphis, nor was he bound to accept a load once he arrived there. Regardless of whether or not he was required to stop or call Memphis, it would seem that if he was at all interested in another load he would have done one or the other. The evidence indicates he did neither. It is undisputed that Hoskins did not drive into the terminal, and he cannot remember whether he called. The terminal had no log to record any such calls and the terminal manager is deceased. According to Vestor Netotea, Aetna's Director of Personnel and Safety, the practice of the majority of drivers was to wait for a load if one was not available. Hoskins obviously did not do this. He also conceded at page 111 of his March 7, 1974, deposition in answer to questions concerning whether he immediately began to drive back to Ohio, that he couldn't be sure whether he drove straight through but usually he wanted to be back for the holiday. At page 126 of the same document, he says that "probably" the reason he would have turned down a load if it had been offered would be because he wanted to be back to his family for the holiday. Such statements, while not

complete concessions, do indicate, in the absence of any proof to the contrary, that Hoskins' only concern was to get back to his family for the holiday. As such, the Court finds he was on his own mission and not operating within the scope of the Sizemore-Aetna Freight Lines, Inc. lease.

Therefore, based on the foregoing reasons, the Court finds that, as between the insurance carriers of Aetna Freight Lines, Inc. and Robert Sizemore under the terms of their insurance contracts, only Selective Insurance Company of Cincinnati, Ohio, the insurance carrier for Sizemore, is responsible for payment of the losses to the plaintiffs resulting from the negligence of Luther Hoskins on November 22, 1972.