[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-12785

_____

In re: LE CENTRE ON FOURTH, LLC,

Debtor.

_____

WILLIE JACKSON,
NINA JACKSON,

Plaintiffs-Appellants,

*versus*

LE CENTRE ON FOURTH, LLC,
LE CENTRE ON FOURTH MASTER TENANT, LLC,
AL J. SCHNEIDER CO.,
U.S. TRUSTEE,

Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 0:19-cv-62199-AHS

———————————————

Before JORDAN, JILL PRYOR, and TJOFLAT, Circuit Judges.
JILL PRYOR, Circuit Judge:

Willie Jackson was traveling in his wheelchair along a street near the Embassy Suites Hotel in downtown Louisville, Kentucky, when he was hit by a hotel valet driver. He suffered severe injuries. Mr. Jackson and his wife sued, in Kentucky state court, several entities connected to the hotel. These entities included Le Centre on Fourth, LLC ("Le Centre"), the owner of the hotel property, which had filed for Chapter 11 bankruptcy protection before suit was filed against it.

During the bankruptcy proceeding, Le Centre filed a disclosure statement in connection with its proposed reorganization plan. The disclosure statement explained that Le Centre's Chapter 11 plan included the release not only of Le Centre, but also of related non-debtor parties. The Jacksons' attorney received an amended version of the disclosure statement and a copy of the

plan, which included information about the non-debtor releases. Le Centre did not serve the Jacksons with a specific form of notice required by the Federal Rules of Bankruptcy Procedure, however. A short time later, the bankruptcy court issued a confirmation order approving the Chapter 11 plan. After the plan went into effect, Le Centre and two other released entities filed a joint motion to dismiss in the state court action, arguing that the confirmation order barred the Jacksons' claims against them. The Jacksons asked the bankruptcy court to allow them to proceed nominally against these entities in the state court action to reach the entities' insurers. The bankruptcy court denied this request. The Jacksons appealed the denial to the district court, which affirmed the bankruptcy court's decision.

Now, on appeal, the Jacksons argue that the notice they received concerning Le Centre's Chapter 11 plan did not satisfy due process. They alternatively argue that the district court erred by upholding the bankruptcy court's interpretation of the confirmation order barring their nominal claims. After careful consideration, and with the benefit of oral argument, we affirm. We agree with the district court that that the Jacksons received sufficient notice to satisfy due process. We also conclude that the bankruptcy court did not abuse its discretion by ruling that the Jacksons could not pursue their nominal claims.

## I.    BACKGROUND

Critical to the issues on appeal are the relationships between Le Centre and two other entities. We first describe these relationships. Then, we turn to the specific facts of this case.

## A.    Le Centre's Relevant Business Relationships

At the times relevant to this action, Le Centre owned a piece of property in Louisville, Kentucky, that included an Embassy Suites Hotel. Le Centre was owned by Bachelor Land Holdings, LLC, and 501 Fourth Street, LLC. Eric Bachelor owned Bachelor Land Holdings, LLC, and Al J. Schneider Company, Inc. ("AJS"), owned 501 Fourth Street, LLC.

Le Centre leased the Embassy Suites property to Le Centre on Fourth Master Tenant, LLC ("Master Tenant"). According to the parties' written agreement (the "Master Lease"), the lease ran for a period of more than 30 years. Stonehenge Community Development LXVIII, LLC, solely owned Master Tenant, but U.S. Bank ultimately owned Master Tenant through several different subsidiaries.

Le Centre and Master Tenant also entered into an agreement for Master Tenant to manage the Embassy Suites property for at least five years (the "Management Agreement"). Le Centre and AJS then executed an agreement under which AJS would manage the hotel (the "Sub-Management Agreement").

The Master Lease and Management and Sub-Management Agreements each contained an indemnification provision. In the Master Lease, Master Tenant "agree[d] to pay and to defend, in-

20-12785                Opinion of the Court                5

demnify and hold harmless [Le Centre] . . . from and against any and all liabilities, losses, damages, causes of action, suits, claims, demands, judgments, costs and expenses of any kind or any nature whatsoever" that could be imposed on Le Centre involving "any injury to or death of . . . any person . . . on the [the Embassy Suites property], in each case arising out of the use, possession, ownership, condition or occupation of the [the Embassy Suites property]. . . ." Bankr. Doc. 413-2 at 21.[1] The Management Agreement required Le Centre to "hold and save [Master Tenant] harmless from all claims, liability and damage arising from the management and operation of the [Embassy Suites property] and from liability for injury suffered by an employee or any other person whomsoever" unless Master Tenant caused the injury through its own negligent or willful conduct. Bankr. Doc. 413-3 at 6. The Sub-Management Agreement, too, contained an indemnification provision. Under the terms of this provision, Le Centre agreed to "indemnif[y], defend[], and hold[] harmless" AJS from "any and all losses, costs, damages, liabilities, claims, demands, actions and causes of action, and expenses whatsoever" that AJS incurred while managing the Embassy Suites Hotel unless AJS incurred the liability through its own negligence, gross misconduct, or fraud. Bankr. Doc. 413-4 at 13.

---

[1] Citations to "Bankr. Doc. #" refer to the numbered entries on the bankruptcy court's docket. Citations to "Doc. #" refer to the entries on the district's court's docket.

## B.    Mr. Jackson's Injury

Mr. Jackson stayed at the Embassy Suites Hotel during a trip he took to Louisville. Mr. Jackson is a paraplegic and uses a wheelchair. When Mr. Jackson arrived at the hotel and dropped off his car, which was outfitted with hand controls, with the valet, he discovered another car blocking the wheelchair ramp to the Embassy Suites' front entrance. Because Mr. Jackson could not get up the ramp, he had to travel on the street in his wheelchair to get into the hotel. While Mr. Jackson traveled up the street, the valet driver lost control of Mr. Jackson's car. The car struck Mr. Jackson from behind, causing severe injuries.

## C.    The Jacksons' State Court Action and Le Centre's Bankruptcy

Mr. Jackson and his wife brought suit in Kentucky state court against the valet driver and the valet company. They then sought to amend their complaint to add Le Centre, Master Tenant, and AJS. Le Centre filed for Chapter 11 bankruptcy after the Jacksons filed their initial complaint but before they amended to add Le Centre as a party. Before amending the complaint to add Le Centre, Mr. Jackson filed a motion in the bankruptcy court for limited relief from the automatic stay. The bankruptcy court granted him relief "for the sole purpose of pursuing any liability insurance that [Le Centre] may have related to its property, the Embassy Suites . . . ." Bankr. Doc. 208 at 1. At the same time, Mr. Jackson waived "any claim against the Bankruptcy Estate." *Id.* at 2. Mrs. Jackson did not request or receive relief. The Jacksons

then filed their amended complaint, which added Le Centre, Master Tenant, and AJS as defendants.[2]

While the Jacksons' lawsuit proceeded in Kentucky state court, Le Centre's Chapter 11 bankruptcy also moved forward. Le Centre updated its list of creditors to include the Jacksons, so the Jacksons' attorney would receive notices in the bankruptcy proceeding. It then filed its First Amended Disclosure Statement, which included a copy of Le Centre's First Amended Chapter 11 Plan of Reorganization. The First Amended Disclosure Statement included a four-page disclaimer that directly followed the cover page. The disclaimer stated that "THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES" of the First Amended Plan. Bankr. Doc. 298 at 2. It further provided that "CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN *IN THEIR ENTIRETY* BEFORE VOTING TO ACCEPT OR REJECT THE PLAN." *Id.* (emphasis in original).

The First Amended Disclosure Statement included a section devoted to releases, which it described as "an integral part of

---

[2] The Jacksons' amended complaint named AJS and "Le Centre on Fourth, LLC aka Le Centre on Fourth Master Tenant LLC," erroneously treating Le Centre and Master Tenant as a single, combined entity. Bankr. Doc. 410 at 18. In its answer to the amended complaint, Master Tenant identified itself as a separate entity from Le Centre.

the [First Amended] Plan." *Id.* at 45. It explained that any person who voted for the First Amended Plan or abstained from voting would "be deemed to fully, completely, unconditionally, irrevocably, and forever release the Released Parties" from any claims that the person might have against these parties. *Id.* at 46. The First Amended Disclosure Statement did not expressly define "Released Parties."[3] But it did state that 11 U.S.C. § 105(a) provided the bankruptcy court with the authority to release non-debtor parties. It went on to explain that "the non-Debtor releases in the Plan are to individuals and entities which are affiliates of the current members and managers of the Debtor" because a suit against these non-Debtor parties would "in essence be a suit against the Debtor and [would] deplete assets of the Debtor's estate." *Id.* at 48. The First Amended Disclosure Statement further made clear that the Released Parties would receive a discharge injunction in their favor.

The bankruptcy court set a date for a confirmation hearing to approve Le Centre's First Amended Plan. Meanwhile, Le Centre filed a Second Amended Disclosure Statement and Second Amended Plan; these documents included the same disclaimer and information about the Released Parties as the First Amended Disclosure Statement and the First Amended Plan, respectively.

---

[3] The attached First Amended Plan defined "Released Parties" to include "the Debtor"—Le Centre—and AJS. Bankr. Doc. 298 at 77. The definition did not include Master Tenant.

The Jacksons' attorneys received copies of the bankruptcy court's order setting the date for the confirmation hearing, the Second Amended Disclosure Statement, and the Second Amended Plan.

Le Centre amended its Chapter 11 plan for a third time on the day of the confirmation hearing. The Third Amended Plan augmented the definition of Released Parties to include "U.S. Bank National Association, its parents, subsidiaries and affiliates" and "USBCDC [U.S. Bankcorp Community Development Corporation] and its parents, subsidiaries and affiliates and counsel." Bankr. Doc. 339 at 13.

The bankruptcy court then held the confirmation hearing. The Jacksons did not appear at the hearing or make any objections. The bankruptcy court confirmed Le Centre's Third Amended Plan, ruling that "adequate and sufficient notice of the Confirmation Hearing" was given and other important information "was timely provided in compliance with the Bankruptcy Rules and provided due process to all parties in interest." Bankr. Doc. 343 at 5.

The bankruptcy court examined and specifically addressed the releases included in the Third Amended Plan. The court determined that under the Bankruptcy Code it could approve all the releases in the Third Amended Plan because they were integral to Le Centre's reorganization. It also determined that the "failure to include such [release] provisions would seriously impair if not preclude the Debtor's ability to confirm a consensual Plan." *Id.* at 17. The bankruptcy court's order confirmed the releases in the

Third Amended Plan and permanently enjoined all persons "on account of any Claim . . . satisfied and released pursuant to the Plan or Confirmation Order, from . . . commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder." *Id.* at 27.

## D.    The Jacksons' Attempt to Clarify or Amend the Confirmation Order

After the bankruptcy court issued its confirmation order, Le Centre, AJS, and Master Tenant sought to dismiss the claims against them in the Jacksons' state court action. They argued that all the claims were barred by the confirmation order, which contained a discharge injunction, and the Third Amended Plan. The Jacksons then moved the bankruptcy court to clarify that neither the confirmation order nor the Third Amended Plan enjoined them from nominally asserting claims against Le Centre, AJS, and Master Tenant. The Jacksons explained that they asserted these nominal claims to recover against Le Centre's, AJS's, and Master Tenant's respective insurers only. AJS responded that it possessed no applicable liability insurance at the time of Mr. Jackson's injury. The Jacksons then amended their motion, asking the bankruptcy court to allow them to proceed directly against AJS.

In their amended motion, the Jacksons argued that the confirmation order applied only to the Released Parties and not the Released Parties' insurers. They asserted that allowing them to proceed nominally against Le Centre, AJS, and Master Tenant to

reach those entities' insurers was consistent with the Bankruptcy Code and caselaw. The Jacksons also argued that applying the releases in the confirmation order to their claims in state court would violate due process. Specifically, they contended that Le Centre had failed to provide them with notice that complied with the requirements of Federal Rule of Bankruptcy 2002. They asserted that Le Centre needed to comply with Rule 2002 because the confirmation order included a discharge injunction that applied to claims against parties other than Le Centre. Le Centre, AJS, and Master Tenant conceded that Mr. Jackson could bring a nominal claim against Le Centre but opposed the remainder of the Jacksons' motion.

The bankruptcy court held a hearing on the Jacksons' motion. At the hearing, one of the Jacksons' attorneys admitted that other attorneys for the Jacksons had received copies of Le Centre's disclosure statements and draft reorganization plans but had not read them. They argued that the attorneys' failure to read these documents did not matter because they had received insufficient notice that failed to comply with Rule 2002.

After the hearing, the bankruptcy court denied the Jacksons' motion. The court determined that the Jacksons' attorneys had received copies of the Second Amended Disclosure Statement and Second Amended Plan. The court also found that the Jacksons' attorneys had received "[n]otice of the hearing on the Disclosure Statement." Bankr. Doc. 416 at 3. Because they had received this information, the bankruptcy court concluded that the

"Jacksons had an opportunity to be heard at a meaningful time and in a meaningful matter but failed to exercise that option. Therefore, no due process violation exists." *Id.* at 7.

The bankruptcy court also determined that the Jacksons could not proceed with nominal claims against the Released Parties. The court explained that the "release of litigation claims against [Le Centre] was critical to the implementation of the Third Amended Plan." *Id.* at 8. It then described the indemnification agreements between Le Centre and Master Tenant and Le Centre and AJS. Because of these agreements, the court ruled, "any claim against one of the Released Parties, even nominally, will result in direct claims for indemnification against at least one other Released Party." *Id.* at 9. The court concluded that such claims would interfere with the implementation of the plan, so the Jacksons' nominal claims needed to be barred.

E.    The Jacksons' Appeal to the District Court

The Jacksons appealed the bankruptcy court's decision to the district court. The district court affirmed the decision. The district court ruled that no due process violation occurred, concluding that Le Centre had "served the Jacksons' counsel with the notices and copies of the plans and disclosure statements." Doc. 22 at 7. The court also determined that "the plain language of Rule 2002" did not require Le Centre to provide the Jacksons with a separate notice that complied with the rule's specific requirements. *Id.*

The district court further concluded that the bankruptcy court did not abuse its discretion by determining that the confirmation order barred the Jacksons' nominal claims. The court explained that 11 U.S.C. § 105(a) granted the bankruptcy court the power to release non-debtors to further the bankruptcy plan. The district court concurred with the bankruptcy court that the indemnification agreements created a situation where nominal claims against either AJS or Master Tenant could result in direct indemnification claims against Le Centre. Because this situation would interfere with the bankruptcy plan, the district court agreed with the bankruptcy court's decision to bar the Jacksons' nominal claims.

The Jacksons timely appealed to this Court.

## II.    STANDARD OF REVIEW

Multiple standards of review govern this case. When reviewing an order of the district court entered in its role as an appellate court reviewing the bankruptcy court's decision, this Court independently examines the factual and legal determinations of the bankruptcy court, applying the same standard of review as the district court. *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs. Inc.)*, 408 F.3d 689, 698 (11th Cir. 2005). Generally, we review *de novo* any determination of law, whether by the bankruptcy court or the district court, and we review the bankruptcy court's factual findings for clear error. *Id.* Whether a party received sufficient notice to satisfy due process is a determination of law that we review *de novo. Jordan v. Benefits Rev. Bd. of U.S.*

14                    Opinion of the Court                    20-12785

*Dep't of Lab.*, 876 F.2d 1455, 1458–59 (11th Cir. 1989). In addition, we review a bankruptcy court's decision not to modify its discharge injunction for an abuse of discretion. *SuVicMon Dev., Inc. v. Morrison*, 991 F.3d 1213, 1219 (11th Cir. 2021).

## III.    DISCUSSION

The Jacksons contend that the district court erred by ruling that they had received sufficient notice of the third-party releases to satisfy due process. Alternatively, they argue that the district court erred by refusing to modify the discharge injunction in the confirmation order to allow their nominal claims to proceed. After careful review, we agree with the district court as to both arguments. For the following reasons, we affirm.

## A.    The Jacksons Received Sufficient Notice.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). A judgment is generally void if the court "acted in a manner inconsistent with due process of law." *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001) (internal quotation marks omitted).

It is undisputed that the Jacksons received copies of the disclosure statement and plan, which provided them with actual notice of the releases. Nevertheless, the Jacksons argue that they did

not receive notice reasonably calculated to inform them of the third-party releases in the bankruptcy plan, which violated their due process rights. Specifically, they assert that Le Centre did not provide them notice that comported with Bankruptcy Rule 2002(c)(3). This rule states that if the bankruptcy plan "provides for an injunction against conduct not otherwise enjoined under the Code," then the creditor must receive notice that includes a conspicuous statement that the plan proposes a discharge injunction, a brief description of the injunction, and the identity of the entities subject to the injunction. Fed. R. Bankr. P. 2002(c)(3). In turn, this notice must be supplied 28 days before the confirmation hearing so that a party can file objections. Fed. R. Bankr. P. 2002(b)(2). No party disputes that Rule 2002(c)(3) applied to Le Centre's bankruptcy plan.

The Jacksons' argument turns on whether due process required that the Jacksons receive notice in compliance with the procedural requirements of Rule 2002(c)(3) even though they received actual notice of the same information in a different form. The Supreme Court of the United States addressed a very similar issue in another bankruptcy context in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010). The Court's analysis in *Espinosa* is instructive.

In *Espinosa*, a debtor filed a Chapter 13 bankruptcy petition after taking out some student loans. *Espinosa*, 559 U.S. at 264. The debtor's proposed bankruptcy plan required him to pay the principal of his student loan debt but discharged the accrued in-

terest. *Id.* The bankruptcy court mailed notice and a copy of the debtor's plan to the creditor who had issued the loans. *Id.* at 265. The plan included a disclaimer warning creditors that their rights could be impaired by the plan. *Id.* The creditor did not object to the plan. *Id.* The bankruptcy court confirmed the plan and ultimately discharged the student loan interest. *Id.* at 265–66. Importantly, the debtor failed to comply with Bankruptcy Rules 7001, 7003–04, or 7008. *Id.* at 263–64, 266. Together, these rules required the debtor to initiate an adversarial proceeding against his creditor before the bankruptcy court could determine the debt was dischargeable. *Id.* at 266. To initiate the adversarial proceeding, the Bankruptcy Rules required the debtor to serve the creditor with summons and complaint. *Id.* Because it did not receive the notice required under the rules, the creditor argued that its due process rights had been violated, voiding the confirmation order. *Id.* at 266, 272.

The Supreme Court rejected the creditor's argument in three steps. *Id.* at 272. First, the Court characterized the required notice as "a right granted by a procedural rule," the "deprivation" of which "did not amount to a violation of [the creditor's] constitutional right to due process." *Id.* Second, it determined that the creditor's due process rights had been "more than satisfied" because the creditor "received *actual* notice of the filing and contents of" the debtor's plan. *Id.* (emphasis in original). Third, the Supreme Court ruled that the creditor should have objected in the bankruptcy court to the debtor's failure to comply with the

Bankruptcy Rules and "forfeited [those] arguments" by not doing so. *Id.* at 275.

Although *Espinosa* involved Chapter 13 bankruptcy and not Chapter 11, both *Espinosa* and this case deal with procedural notice requirements imposed by the Bankruptcy Rules. Like the creditor in *Espinosa*, the Jacksons received actual notice of the contents of the bankruptcy plan. Also like the creditor in *Espinosa*, the Jacksons failed to object in the bankruptcy court to Le Centre's failure to comply with Rule 2002(c)(3). The Jacksons argue that without the notice required by Rule 2002(c)(3), their attorneys had no reason to read Le Centre's proposed plan before the confirmation hearing. The *Espinosa* creditor similarly argued that it "did not receive adequate notice of [the debtor's] proposed discharge of his student loan interest" even though it could have read the copy of the bankruptcy plan it received with this information.[4] *Espinosa*, 559 U.S. at 272. The Supreme Court rejected this argument. *Id.* Given the Supreme Court's rejection of a near-

---

[4] Mr. Jackson's position differs slightly from the *Espinosa* creditor's position because Mr. Jackson waived "any claim against the Bankruptcy Estate." Bankr. Doc. 208 at 2. He argues that this fact gave his attorneys less incentive to read Le Centre's disclosure statement and bankruptcy plan. But the law is clear that a bankruptcy court can issue non-debtor releases in bankruptcy restructuring plans. *SE Prop. Holdings, LLC v. Seaside Eng'g & Surveying, Inc. (In re Seaside Eng'g & Surveying, Inc.)*, 780 F.3d 1070, 1076–79 (11th Cir. 2015). This should have put Mr. Jackson's attorneys on notice that the bankruptcy court retained the authority to impact Mr. Jackson's rights against third parties despite his waiver of claims against the bankruptcy estate.

ly identical argument in a very similar bankruptcy context, the Jacksons' argument must fail.

Contrary to the Jacksons' argument, our decision in *Spring Valley Farms, Inc. v. Crow (In re Spring Valley Farms, Inc.)*, 863 F.2d 832 (11th Cir. 1989), does not compel a different result. In that case, the plaintiffs brought a nuisance suit against a chicken-processing operation. *In re Spring Valley Farms, Inc.*, 863 F.2d at 833. The processing operation filed for bankruptcy. *Id.* The plaintiffs had "actual knowledge of the existence of [this] bankruptcy proceeding," *id.*, but they never received "notice of the bar date for filing a proof of claim" required by Bankruptcy Rule 2002(a)(8), *id.* at 834. The bankruptcy court ultimately discharged the plaintiffs' nuisance suit. *Id.* at 833. We held that because the plaintiffs did not receive notice of the bar date, their due process rights had been violated. *Id.* at 835. We did not address the question whether receiving actual notice of the bar date would have satisfied due process. *Id.* at 835 n.2.

In this case, Le Centre provided the Jacksons with information that went well beyond the mere existence of a bankruptcy proceeding. The Second Amended Disclosure Statement included a four-page disclaimer advising the Jacksons to read the entire bankruptcy plan and specifically included a section on releases. The attached Second Amended Plan showed that Le Centre and AJS were included amongst the Released Parties. Unlike the plaintiffs in *In re Spring Valley Farms, Inc.*, the Jacksons received all

the information required by Rule 2002(c)(3)—just not in the form contemplated by the Rule.

Where–as here–a reorganization plan "provides for an injunction against conduct not otherwise enjoined under the Code," Rule 2002 (c)(3) requires that notice for a hearing regarding the plan must (1) include "a statement that the plan proposes an injunction" with "conspicuous language," (2) provide a brief description of the "nature of the injunction," and (3) "identify the entities that would be subject to the injunction." Although the Second Amended Disclosure Statement included the information required by Rule 2002(c)(3), the notice did not comply with the Rule. Subsection (c)(3) of the Rule requires the notice to contain a separate "brief description" to inform parties about the nature of the injunction and the entities subject to that injunction. Without this notice, creditors must sort through hundreds of pages of a bankruptcy reorganization plan to determine whether their rights are affected by a non-standard injunction. The notice here did not provide the information in the manner required by Rule 2002(c)(3), and for purposes of the Bankruptcy Code, it was therefore inadequate. See 9 Collier on Bankruptcy ¶ 2002.04[3] (16th ed. 2021) ("A failure to include the required language renders the notice ineffective.").

It is true that the Jacksons did not receive a copy of the Third Amended Plan before the bankruptcy court entered its confirmation order. The Third Amended Plan expanded the definition of Released Parties to include "U.S. Bank National Associa-

tion, its parents, subsidiaries and affiliates" and "USBCDC [U.S. Bankcorp Community Development Corporation] and its parents, subsidiaries and affiliates and counsel." Bankr. Doc. 339 at 13. This broader definition included Master Tenant, which was owned through multiple subsidiaries by U.S. Bank. The Jacksons arguably did not receive actual notice of Master Tenant's release before the bankruptcy court issued its confirmation order. But their briefing did not raise this issue on appeal, so it has been waived.[5] See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

To sum up, the Jacksons received actual notice of the information that Bankruptcy Rule 2002(c)(3) required Le Centre to provide. The Supreme Court determined in *Espinosa* that actual notice is sufficient to satisfy due process, even where a debtor violates procedural requirements for supplying notice prescribed by

---

[5] Relatedly, on appeal the Jacksons argue that even if they are deemed to have received notice of the Third Amended Plan, the "USBCDC and its parents, subsidiaries and affiliates and counsel" language provided insufficient notice that Master Tenant would be included in the release. The Jacksons did not raise this issue before the bankruptcy court or the district court, however, so they cannot argue it on appeal. See Finnegan v. Comm'r of Internal Revenue, 926 F.3d 1261, 1271 (11th Cir. 2019) ("The general rule is that we will not consider an issue raised for the first time on appeal.").

the Bankruptcy Rules. *Espinosa*, 559 U.S. at 272. We conclude, then, that the district court did not err in determining that the Jacksons suffered no due process violation.[6]

## B.    The Bankruptcy Plan and Injunction Bar Nominal Claims.

The Jacksons next argue that even if the injunction is valid, the district court erred in not allowing them to proceed with nominal claims against AJS and Master Tenant. The bankruptcy court barred claims against AJS and Master Tenant under the authority of 11 U.S.C. § 105(a). Under § 105(a), a "bankruptcy court can enter 'any order' necessary or appropriate to carry out the provisions of the Bankruptcy Code." *Munford v. Munford, Inc. (In re Munford, Inc.)*, 97 F.3d 449, 455 (11th Cir. 1996). We have previously held that this authority includes the ability to release non-debtor third parties. *SE Prop. Holdings, LLC v. Seaside Eng'g & Surveying, Inc. (In re Seaside Eng'g & Surveying, Inc.)*, 780 F.3d 1070, 1076–79 (11th Cir. 2015). This argument is therefore unavailing. The Jacksons contend that they should be able to

---

[6] The Jacksons also argue that the bankruptcy court exceeded its authority under the Bankruptcy Code by adjusting the debts of AJS and Master Tenant. This argument does not go to whether the confirmation order is void for lack of due process and should have been raised before the bankruptcy court issued its confirmation order. Because the Jacksons never made this challenge before the bankruptcy court, we cannot consider it now. *See Espinosa*, 559 U.S. at 275 ("But the order remains enforceable and binding on [the creditor] because [the creditor] had notice of the error and failed to object or timely appeal.").

assert nominal claims against AJS and Master Tenant to reach these entities' insurers. As an initial matter, AJS did not have any insurance applicable to Mr. Jackson's injuries. Having discovered this, the Jacksons specifically requested that the bankruptcy court allow them to proceed "directly against AJS." Bankr. Doc. 410 at 3 n.1. The Jacksons cannot now argue that they should be permitted to nominally sue AJS for insurance proceeds that they conceded it does not have.

As to the other released third party, Master Tenant, the Jacksons assert that 11 U.S.C. § 524(e) enables the bankruptcy court to modify its injunction to allow the Jacksons to proceed nominally against Master Tenant to reach its insurer. Section 524(e) provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on . . . such debt." 11 U.S.C. § 524(e). The Jacksons argue that this provision should also apply to non-debtor releases.

Assuming that § 524(e) grants bankruptcy courts the authority to allow nominal claims against released non-debtors, we are not convinced that the bankruptcy court had to do so in this case. This Court recently examined the requirements a party must satisfy to proceed nominally against a discharged debtor to recover from a third party like an insurer. *SuVicMon*, 991 F.3d at 1223–25. We think this analysis is equally applicable to whether a party should be permitted to proceed nominally against a released non-debtor.

In *SuVicMon*, we interpreted our prior caselaw as establishing two prerequisites before a party could proceed nominally against a discharged debtor. *Id.* at 1223. First, "it must be the case that the plaintiff could not meet the legal conditions for [recovering against a third party] without suing the debtor." *Id.* Second, there must be sufficient certainty "that maintaining suit against the debtor will not place any economic burden on the debtor, such that the debtor's fresh start will not be interfered with." *Id.*

We went on to hold that a bankruptcy court's determination of whether a suit would impose an economic burden on the debtor should be reviewed for an abuse of discretion. *Id.* at 1223–24. We based this holding on at least three grounds. *Id.* at 1224–25. First, when parties seek to bring a nominal claim against a discharged debtor, they are requesting modification of an injunction. *Id.* at 1224. And a decision to modify an injunction is reviewed for an abuse of discretion. *Id.*; *see also Epic Metals Corp. v. Souliere*, 181 F.3d 1280, 1283 (11th Cir. 1999) (same). Second, whether there is sufficient certainty that maintenance of a suit will not place an economic burden on the debtor "rests largely on questions of fact." *SuVicMon*, 991 F.3d at 1224. This is a determination that "often calls for trial-court discretion." *Id.* Third, we applied the principal that "exceptions to the general rule of discharge are to be strictly construed in favor of the debtor." *Id.* at 1225 (alteration adopted) (internal quotation marks omitted).

Much of the reasoning justifying *SuVicMon* is equally applicable here. The Jacksons seek to modify the bankruptcy court's

confirmation order, which included an injunction. The bankruptcy court's decision therefore should be reviewed for an abuse of discretion. Furthermore, the question of whether maintaining an action is substantially certain to create an economic burden for a released non-debtor is the same type of highly factual inquiry that we described in *SuVicMon*. Indeed, the bankruptcy court in this case had to deal with the "quite delicate" facts surrounding whether costs could be imposed "in the future." *Id.* Although the present case does not implicate the general rule that discharge should be strictly construed in favor of the debtor, on the whole, the analysis in *SuVicMon* applies to the facts and circumstances of this case.

We now turn to whether the Jacksons' nominal claims against Master Tenant meet the two requirements described in *SuVicMon.* The first requirement is satisfied because the Jacksons seek to reach Master Tenant's insurer in an action in Kentucky state court, and Kentucky law requires that Master Tenant be included in the suit as a genuine prerequisite to recovery.[7] *See Ford*

---

[7] In tort actions like the Jacksons', Kentucky state courts apply their state's substantive law if there is "any significant contact with Kentucky." *Reichwein v. Jackson Purchase Energy Corp.*, 397 S.W.3d 413, 416 (Ky. Ct. App. 2012) (internal quotation marks omitted); *see also Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983) ("Kentucky courts have apparently applied Kentucky substantive law *whenever possible.*" (emphasis in original)). Under this rule, if an "accident occurs in Kentucky [like Mr. Jackson's] there is enough contact from that fact alone to justify applying Kentucky law." *Arnett v. Thompson*, 433 S.W.2d 109, 113 (Ky. Ct. App. 1968).

v. Ratliff, 183 S.W.3d 199, 203 (Ky. Ct. App. 2006) ("Contrary to direct action jurisdictions, in Kentucky an injured person cannot sue the insurance company in his original action against the insured." (footnote and internal quotation marks omitted)).

As to the second requirement, we cannot conclude that the bankruptcy court abused its discretion by determining that the Jacksons' nominal claims could result in an economic burden on Le Centre. In denying the Jacksons' request to proceed nominally against Master Tenant, the bankruptcy court determined that even a nominal claim could cause Master Tenant to seek indemnification against Le Centre. In the Management Agreement, Le Centre agreed to "hold and save [Master Tenant] harmless from all claims, liability and damage arising from the management and operation of the [Embassy Suites property] and from liability for injury suffered by an employee or any other person whomsoever" unless Master Tenant's own negligence or willfulness caused the injury. Bankr. Doc. 413-3 at 6. Under this provision, Master Tenant could seek indemnification from Le Centre if the Jacksons proceeded with a nominal tort claim against Master Tenant. In addition, Master Tenant could seek to have Le Centre indemnify it for its attorney's fees and other litigation costs even if the Jacksons' claims ultimately were unsuccessful. Notably, the Jacksons have identified no authority under Kentucky law that would prohibit Master Tenant from later seeking indemnification for its attorney's fees from Le Centre. Cf. Callihan v. Callihan, 528 S.W.3d 353, 354–55 (Ky. Ct. App. 2017) (upholding an award of attorney's

fees where the "[one spouse] agree[d] to hold harmless and indemnify [the other spouse] for any debts or obligations concerning his business").

The Jacksons argue that the Management Agreement's indemnification provision could not result in an economic burden on Le Centre because Le Centre's insurance policy would cover these costs. This argument ignores that Le Centre's policy has a limit. After all, Mr. Jackson still has a nominal claim against Le Centre to reach its insurer. If this tort claim succeeds, it could potentially exhaust Le Centre's policy. Le Centre could then be left directly responsible for any indemnification claim made by Master Tenant.

The bankruptcy court's findings that Jackson's nominal claims against Master Tenant could impose an economic burden on Le Centre are not clearly erroneous. The bankruptcy court thus acted within its discretion by declining to amend its confirmation order to allow these nominal claims to proceed. The district court did not err in upholding the bankruptcy court's decision.

## IV.   CONCLUSION

We conclude that (1) the Jacksons received sufficient notice concerning Le Centre's bankruptcy plan to satisfy due process and (2) the bankruptcy court was within its discretion to prohibit the Jacksons from proceeding with their nominal claims against the

20-12785                  Opinion of the Court                  27

released non-debtor parties. Accordingly, we affirm the judgment of the district court.

**AFFIRMED.**